Sara R. Preston, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

John W. Preston, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 74559, 74560. Promulgated January 21, 1937.

*Adolphus E. Graupner, Esq.,* for the petitioners.
*Ralph E. Smith, Esq.,* and *T. C. Mooney, Esq.,* for the respondent.

OPINION.

SMITH: These proceedings, consolidated for hearing, involve income tax deficiencies for 1930 as follows:

| Petitioner | Docket No. | Deficiency |
|---|---|---|
| Sara R. Preston | 74559 | $3,572.10 |
| John W. Preston | 74560 | 15,719.86 |

Since January 8, 1902, the petitioners have been husband and wife, domiciled within the State of California.

In his income tax return for 1930 John W. Preston reported that he:

* * * Collected during 1930 a/c fees for personal legal services rendered prior to closing law office [December, 1926], the following: Case—Preston v. Herminghaus, 49,123.10 — Rowlands case, 1,000 — Bullard case, 68.25 — Total, 50,191.35.

On the face of the return the above mentioned $50,191.35 was reported as "Income from Business or Profession." The net income was returned as $37,466.35. He claimed that he was taxable upon only one-half of that amount, $18,733.18, and computed his tax liability upon the basis of that amount of net income.

Sara R. Preston in her return showed gross income of $18,733.17, one-half of the net income shown on her husband's return, less contributions of $300, or a net income of $18,433.17, upon which the tax liability was computed.

In the determination of the deficiency the respondent added to the net income reported by Sara R. Preston $29,087.86 which the respondent contends was constructively received by John W. Preston during the year, and determined a deficiency of $3,572.10 accordingly.

In the determination of the deficiency due from John W. Preston the respondent added to the net income shown on the return $58,175.72 representing income constructively received, although one-half of this amount was added to the net income of Sara R. Preston in the determination of the deficiency against her, and also $18,733.17 reported as income by the wife, on the ground that that amount was not community income.

The returns were both made on the cash receipts and disbursements basis.

Sara R. Preston contends that the respondent erred in adding any amount to the net income reported by her on her return. John W. Preston contends that the respondent erred in adding to his net income $58,175.72 which the respondent determined was constructively received by him and also erred in adding to his income any part of the $18,733.17 reported by the wife. He also contends that minor

errors were made by the respondent in the determination of the deficiency, which will be noted below.

The material facts bearing upon these cases are contained in a lengthy written stipulation of facts signed by counsel for both parties.

From January 1, 1923, to December 24, 1926, John W. Preston and Robert Duncan, both attorneys at law, were engaged in the practice of law in California as copartners under the firm name of Preston & Duncan. The copartnership was dissolved on or about December 24, 1926, by reason of the fact that John W. Preston had been elected an associate justice of the Supreme Court of California. He entered on his duties as associate justice on December 27, 1926, and held such office continuously thereafter until October 1, 1935.

During 1924 John W. Preston and James F. Peck, attorneys, were employed by oral agreement by three individuals, hereinafter called the "Herminghaus heirs", to represent them. On October 8, 1925, the terms of the oral agreement of employment between John W. Preston and James F. Peck were reduced to writing and signed by the parties. It was understood between all parties concerned that Robert Duncan might assist in the rendering of the legal services. There was an agreement between Preston and Duncan that Duncan was to be paid one-half of all amounts of money received by Preston from the Herminghaus heirs under the contract of employment, after deduction of expenses incurred and paid by Preston thereunder. Subsequent to the dissolution of the partnership between Preston and Duncan on or about December 24, 1926, Duncan continued to render and perform services under the contract.

During November, or the early part of December, 1926, the attorneys, Preston and Peck, secured payments to the Herminghaus heirs of $260,000. From this amount the Herminghaus heirs paid to Preston and Peck the sum of $35,000 on account as follows:

| | |
|---|---|
| December 26, 1926_____ | $12,000 |
| June 25, 1927_____ | 8,000 |
| July 24, 1927_____ | 15,000 |

All of said amounts were paid by checks made payable jointly to "James F. Peck and John W. Preston" and delivered to John W. Preston, who endorsed them and deposited them in his personal bank account, and divided the amounts thus received, one-half to James F. Peck and the other half in equal shares to Robert Duncan and himself.

Subsequent to July 29, 1927, and on or about November 1, 1927, the Herminghaus heirs, without consulting Preston or Peck, sold the lands which were the subject of the litigations to a subsidiary of the Southern California Edison Co. The question immediately arose as

to the fees to which Preston and Peck were entitled under their contract. No settlement of such dispute being otherwise obtainable, Preston and Peck employed Theodore M. Stuart to bring suit against the Herminghaus heirs for a recovery of the fees due them under the contract. Judgment was rendered in their favor, which was affirmed by the Supreme Court of the State of California on November 1, 1930. *Preston* v. *Herminghaus*, 211 Cal. 1; 292 Pac. 953.

On December 9, 1930, the Herminghaus heirs delivered to John W. Preston a check made payable jointly to John W. Preston and James F. Peck in the amount of $311,447.65 in satisfaction of the above mentioned judgment and in payment of the final legal services rendered by John W. Preston, James F. Peck, and Robert Duncan under the terms of the contract. The judgment was rendered in the amount of $314,597.65, but from the total was deducted $3,150 which represented $2,500 theretofore paid by the Herminghaus heirs to John W. Preston and $650 interest thereon. In his income tax return for 1930 John W. Preston did not report the receipt of any part of the $2,500. John W. Preston admits, however, that the $2,500 deducted from the face of the judgment, as above indicated, constitutes taxable income to him for 1930. (He contends that if the $650 should be included in his gross income he is entitled to a deduction of a like amount representing interest paid on indebtedness.)

Upon the receipt of the check for $311,447.65 on December 9, 1930, John W. Preston endorsed on the back thereof his own name and that of James F. Peck and attempted to deposit the same to his personal account in the Crocker First National Bank of San Francisco for division between Peck and himself in the proportion of one-half to Peck, and one-half to himself for himself and Duncan, as had been theretofore done with the $35,000 hereinabove mentioned. The bank declined to accept the check for deposit or to credit the amount to the account of Preston on such endorsement and requested the personal signature of James F. Peck as endorsement on the check before it would credit the amount to the account of John W. Preston. Preston thereafter, and on the same date, caused the check to be presented to James F. Peck with the request that he endorse the same in order that it might be deposited in bank and the amount thereof divided.

When the check was presented to James F. Peck for his endorsement Peck took possession of it, endorsed his name thereon, and deposited the same in the Crocker First National Bank of San Francisco to the joint account of himself and John W. Preston under

terms of deposit which would not permit the withdrawal of the funds of said joint account except on the signatures of both James F. Peck and John W. Preston.

When the check was so delivered to, endorsed by, and deposited by James F. Peck he knew that John W. Preston claimed one-half of the amount thereof. Peck claimed two-thirds of the amount of the check and also two-thirds of the amount of $3,150 credited by the Herminghaus heirs to Preston as above set forth.

After the deposit had been made Preston, on December 9, 1930, called at the office of Peck in San Francisco and demanded an equal division and distribution of the amount of the check which had been deposited. Peck refused and rejected the demand of Preston and informed Preston that he would not consent to the distribution of any amount of the deposit to Preston in excess of one-third of the amount of the check less two-thirds of the amount of $3,150 credited by the Herminghaus heirs to Preston as above set forth, or $2,100. At the same time Peck insisted on his right to receive two-thirds of the sum of $311,447.65 plus $3,150, or $209,731.76, and refused to recognize the right of Preston to receive from the deposit any amount greater than $101,715.89.

On December 11, 1930, Preston again called upon Peck at his office and again demanded the division and distribution of the amount of $311,447.65 on joint deposit as aforesaid. Peck again refused to consent to a division and distribution upon any other terms than the two-thirds basis hereinabove set forth. Thereupon Preston proposed that pending adjustments of the controversy checks be drawn upon the account to the amount of $200,000, one check to Peck in the amount of $100,000 and one in favor of Preston in the amount of $100,000. Peck assented to such proposal and thereupon a check in favor of each was drawn upon the joint account in the amount of $100,000. Preston immediately deposited the check drawn in his favor to the credit of his individual account in the Crocker First National Bank.

Approximately $2,000 in interest was credited to the joint account from the date of the deposit to March 1, 1932. In 1932 Peck was indebted to the Crocker First National Bank and by agreement between Preston and Peck $37,803.33 of the amount in the joint account was applied by the bank in satisfaction of Peck's indebtedness. On May 11, 1934, Peck was permitted to withdraw an additional $550. On March 25, 1932, Theodore M. Stuart levied an attachment against the joint account in the amount of $73,402.26 to secure the payment of any judgment he might recover against Preston and Peck for legal services performed by him in obtaining the judgment against the Herminghaus heirs in the amount of $314,-

597.65. The attachment remained in force until about January 18, 1935, on which date the amount of $55,984.83 was paid out of the joint account in full satisfaction of a final judgment with interest thereon rendered in favor of Stuart and against Preston and Peck.

On November 25, 1935, John W. Preston and Adele McM. Duncan, as assignee of Robert Duncan, who died in 1929, brought an action in the Superior Court of the State of California in and for the City and County of San Francisco against James F. Peck and the Crocker First National Bank of San Francisco to determine the respective rights of the parties to the balance of the money then remaining in the bank to the credit of the joint account and also to recover from Peck the amount of $11,848.15, together with interest, which the plaintiffs in the case alleged to be due them in excess of the balance remaining in the bank account on account of the share in the deposit of $311,447.65 to which the plaintiffs claimed right. On December 2, 1935, Preston, on behalf of himself and Adele McM. Duncan, and Peck agreed to compromise the above mentioned action upon the following terms: Peck was to receive $5,478.56 of the balance of $12,498.96 then remaining in the joint bank account, and Preston was to receive $5,478.56 plus an additional amount of $1,541.93 as reimbursement for court costs and expenses previously advanced by him from his personal funds.

When John W. Preston, on December 11, 1930, received $100,000 cash from the joint account he immediately turned over to Adele McM. Duncan, assignee of Robert Duncan, the sum of $50,000. The respondent admits that this was a legal deduction from the portion of the fee received by Preston. The respondent also admits that $1,753.81 of the amount received by Preston represented a reimbursement for moneys advanced by Preston and did not constitute a receipt of taxable income. Upon the $2,500 that had been advanced by the Herminghaus heirs to John W. Preston there was a charge for interest of $650. If Preston is chargeable in 1930 upon the $2,500 plus the accrued interest thereon payable by Preston in the amount of $650, that amount is a legal deduction from Preston's income as interest paid upon indebtedness in 1930. The essence of the respondent's contention is that Preston is liable to income tax in 1930 on account of the Herminghaus fee as follows:

| | | |
|---|---|---|
| One-half of judgment of $314,597.65 | | $157,298.82 |
| Less: | | |
| Reimbursement legal expenses | $1,753.81 | |
| Interest on indebtedness | 650.00 | |
| Payment to A. M. Duncan | 50,000.00 | |
| | | 52,403.81 |
| Balance | | 104,895.01 |

Petitioners, on the other hand, contend that the amount taxable to both of them should be determined as follows:

| | |
|---|---:|
| Cash received December 11, 1930 | $100,000.00 |
| Payable to Adele McM. Duncan | 50,000.00 |
| | |
| Gross share of John W. Preston | 50,000.00 |
| Deduct for reimbursement for advanced costs and expenses | 1,753.81 |
| | |
| Net of check for $311,447.65 returnable by Preston | 49,246.19 |
| Add credit to Preston by Herminghaus heirs | 3,150.00 |
| | |
| Total | 52,396.19 |
| Deduct amount of interest included in said credit | 650.00 |
| | |
| Taxable net income John W. Preston for 1930 | 51,746.19 |

The petitioners also contend that the above mentioned $51,746.19 constitutes community property under the California law and that only one-half of the amount is taxable income of each spouse.

The first question for consideration is whether the petitioners are chargeable to income tax in 1930 upon an amount in excess of $51,746.19 in respect of the Herminghaus fee. In his deficiency notice the respondent states:

\* \* \* in order to protect the interest of the Government, pending final settlement of the dispute relative to proper division of the fee, one-half of the total has been held to have been constructively received by you during the taxable year. \* \* \*

In his brief the respondent submits that "The receipt in 1930 by the petitioner of a check in satisfaction of a judgment for legal fees constituted receipt of income in that year by the petitioner to the extent of his interest therein." The respondent does not, however, state what Preston's interest in the judgment amounted to. The stipulation of facts filed in these proceedings provides:

8. During the period in which services were to be performed under the above mentioned oral and written contracts said Robert Duncan rendered services as attorney in all matters required to be performed thereunder. Such services were performed under agreement between said Duncan and said John W. Preston that said Duncan was to receive from and be paid by said Preston one-half of all amounts of money received by said Preston from said "Herminghaus heirs" under said contracts of employment, after deduction of expenses incurred or paid by said Preston thereunder. Subsequent to the dissolution of the aforesaid partnership of Preston & Duncan on December 24, 1926, said Duncan continued to render and perform services required by said contract. Payments under said agreement were made to said Duncan by said Preston as hereinafter set forth.

It also appears from the stipulation of facts that:

\* \* \* On November 25, 1935, said John W. Preston and Adele McM. Duncan, as assignee of said Robert Duncan, brought action No. 262,507 in the

Superior Court of the State of California, in and for the City and County of San Francisco, against said James F. Peck and The Crocker First National Bank of San Francisco to determine the respective rights of said parties to the balance of said money then remaining in said Bank to the credit of said joint account and, also, to recover from said Peck the amount of $11,848.15, together with interest, which the plaintiffs in said action alleged to be due to them in excess of the balance remaining in said bank account or account of the share in said $311,447.65 to which said plaintiff's claimed right. * * *

From the above, apparently Preston never had more than a one-fourth interest in the fees to be received from the Herminghaus heirs. In any event the stipulation of facts is to the effect that Preston accounted to Duncan or to Duncan's assignee for one-half of any portion of the fees ever received by him from the Herminghaus heirs.

The petitioners herein kept their books of account and made their income tax returns upon the basis of cash receipts and disbursements. In such returns they are required to include in taxable income not only the amounts of cash income received, but also items of income in the form of property that are the equivalent of cash. In *Percy K. Hexter*, 8 B. T. A. 888, at page 896, we said:

When a taxpayer keeps his accounts and renders his returns on the basis of cash receipts and disbursements, the tax is levied only upon gains, profits and income received in money or in that which is the equivalent of money, that is, something having an exchangeable or reasonable market value.

Checks are deemed the equivalent of money and are taxable when received. *Gustav W. Lembeck*, 16 B. T. A. 250; *Avery* v. *Commissioner*, 292 U. S. 210.

In *John A. Brander*, 3 B. T. A. 231, 235, we said:

* * * When taxable income is consistently computed by a citizen on the basis of actual receipts, a method which the law expressly gives him the right to use, he is not to be defeated in his *bona fide* selection of this method by "construing" that to be received *of which in truth he has not had the use and enjoyment.* * * * [Italics supplied.]

In *Eisner* v. *Macomber*, 252 U. S. 189, the Supreme Court defined income as:

* * * not a *growth* or *increment* of value *in* the investment; but a gain, a profit, something of exchangeable value, *proceeding from* the property, *severed from* the capital, however invested or employed, and *coming in*, being "*derived*"—that is, *received* or *drawn by* the recipient (the taxpayer) for his *separate* use, benefit and disposal—*that* is income derived from property. Nothing else answers the description.

In *Commissioner* v. *Darnell, Inc.*, 60 Fed. (2d) 82, it was held that income not actually received during the taxable year, and where right to the receipt has not been definitely fixed, is not taxable income of the year.

In *Commissioner* v. *Cleveland Trinidad Paving Co.*, 62 Fed. (2d) 85, the court stated:

In *Commissioner* v. *R. J. Darnell, Inc.*, 60 F. (2d) 82, 84, we reviewed practically all of the authorities now cited to us and came to the conclusion that as to both income and permissible deductions "it is the fixation of the rights of the parties that is controlling." In *Lucas* v. *American Code Co.*, 280 U. S. 445, 449, 50 S. Ct. 202, 203, 74 L. Ed. 538, the Supreme Court expressed the same thought in saying: "Generally speaking the income tax law is concerned only with realized losses, as with realized gains." And in *Burnet* v. *Logan*, 283 U. S. 404, 413, 51 S. Ct. 550, 553. 75 L. Ed. 1143, it is said: "Conversely, a promise to pay indeterminate sums of money is not necessarily taxable income." In *MacLaughlin* v. *Alliance Ins. Co.*, 286 U. S. 244, 249, 52 S. Ct. 538, 539, 76 L. Ed. 1083, it is said that "realization of the gain is the event which calls into operation the taxing act." Again, in *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417, 423, 52 S. Ct. 613, 615, 76 L. Ed. 1197, it is held that the taxpayer "was not required in 1916 [the year in which profits were earned and paid to a receiver] to report as income an amount which it might never receive." * * *

In *Stoner* v. *Commissioner*, 79 Fed. (2d) 75, it was held that a stockholder's share of an amount deposited, out of proceeds of the sale of corporate stock by a stockholder who acted on behalf of all the stockholders, as an indemnity fund to insure buyer of the fulfillment of the seller's obligations, was not taxable income of the year so deposited, since such stockholder had only qualified possession and control of the whole fund, and was not entitled to his share until the terms of the contract were fulfilled. Certiorari denied, 296 U. S. 650.

The respondent, in support of his contention that Preston is taxable upon the amount of his interest in the fund deposited to the joint account of Preston and Peck, relies upon many decisions of the Board and the courts. We have carefully considered these cases, but find that they are not strictly in point. Thus in *James M. Butler*, 19 B. T. A. 718, the facts were that a taxpayer received a check in 1925 from the executor of an estate for legal services on behalf of the estate. The executor informed him that certain matters of the estate had not been settled and that the petitioner might have to pay back a part of the check given for $15,000. Butler therefore held such check unendorsed until January 1926, at which time he was informed by the executor that there was no possibility that any part of the amount paid him would have to be repaid. The check was cashed in 1926. We held that Butler was liable to income tax in 1925 upon the check received. To the same effect is *Board* v. *Commissioner*, 51 Fed. (2d) 73. In *Hans Pederson*, 14 B. T. A. 1089, the facts were that a taxpayer entered into a contract for construction of certain ships. An initial payment was made under the contract in 1918, amounting to $209,420.30. Subse-

quently, the taxpayer was denied permission by the United States Shipping Board to construct the ships contracted for. The contract was canceled and suit was brought to recover from Hans Pederson the amount which had been paid to him. The litigation was terminated in 1921, at which time it was determined that the taxpayer was entitled to retain $96,630.50. In our opinion we said:

* * * Looking to what actually occurred, we find that petitioner was in possession and claiming the ownership of this sum long prior to the taxable year 1921, and that the final judgment confirmed his right thereto. Under these circumstances we are compelled to hold that respondent erred in including this income in petitioner's gross income for the year 1921. * * *

In the last named case, and in numerous others cited by the respondent, the Board has held that where a taxpayer actually received money or property under a claim of right the taxpayer is liable to income tax upon the amounts received even though at a later date a portion of the money had to be refunded. Those cases are, however, distinguishable from the one at bar. The facts in this case are clear that Preston did not have the use and enjoyment in 1930 of any portion of the check received and made payable to Preston and Peck except to the amount of $100,000. Preston tried to get, in 1930, the joint payee to make a division of the check. The joint payee refused. Of the check deposited to the joint account the money that was not actually distributed to Preston in 1930 was beyond the control and enjoyment of Preston to just as great an extent as though the Herminghaus heirs had not paid it in 1930. The realized gain to Preston in 1930 was no amount in excess of that upon which he admits he is taxable, namely, $51,746.19.

In support of his position that Preston is taxable upon a greater amount the respondent cites *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417. We are of the opinion, however, that that opinion supports Preston's contentions and not those of the respondent. In the course of its opinion the Court stated:

* * * If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent.

If Preston had received any part of the check made payable to himself and Peck "without restriction as to its disposition" he would undoubtedly be taxable upon such amount in the year 1930. But the evidence abundantly shows that all that he could receive out of the payment made by the Herminghaus heirs for his separate use and enjoyment in 1930 was the amount which he admits he received, namely, $51,746.19.

The respondent contends that if Preston is not taxable upon a greater amount such a result:

* * * would place within the hands of the taxpayer the power to select the year in which income subject to dispute shall be taxable to him. Instead of agreeing with Peck to receive $100,000 each in 1930 from the proceeds of the check, the petitioner could have agreed to receive any lesser sum, and by determining from time to time with Peck the amount to be distributed to each could select not only the year in which the income is to be taxed to him but also the amount. Such a result does violence to the position consistently adhered to that it is not open to taxpayers to postpone the incidence of taxation. *Heinz* v. *Commissioner*, (C. C. A. 5th, 1934) 70 F. (2d) 461; *Newman* v. *Commissioner* (C. C. A. 10th, 1930) 41 F. (2d) 743. * * *

The facts in the instant proceedings do not show an attempt on the part of either Preston or Peck to postpone the incidence of taxation. The case before us must be decided upon realities and not upon hypotheses. Preston is taxable in 1930 only upon the amount of income received to his "separate use." *Eisner* v. *Macomber, supra.* He did not in 1930 receive to his separate use an amount in excess of $51,746.19, the amount upon which he admits he is taxable.

Preston makes the further contention that the receipt of the $51,746.19 in 1930 was the receipt of community income and that only one-half of that amount constitutes taxable income to him.

The judgment recovered by Preston and Peck for legal fees in connection with the Herminghaus litigation was recovered under a contingent fee contract entered into October 8, 1925, between the Herminghaus heirs and Preston and Peck. The services rendered by petitioner Preston under that contract were all performed prior to December 27, 1926, when he qualified and entered upon his office as an associate justice of the Supreme Court of the State of California. Only community property acquired after July 29, 1927, the effective date of section 161 (a) of the Civil Code of California, is taxable one-half to the husband and one-half to the wife. Preston contends, however, that the fees were earned as a result of the judgment entered by the Supreme Court of California on November 1, 1930, that such judgment represented damages for breach of contract by the Herminghaus heirs, and that Preston's interest in the fees received constituted community property under the laws of California. Such is not, however, the case. See *Preston* v. *Herminghaus, supra.* The judgment was for fees due under the contract, plus interest.

The Board has consistently held that the test of when property is acquired for the purpose of determining whether or not it is community or separate property is not the time of the vesting of the property in the husband or receipt of the income therefrom, but the time of the inception of the rights whereby income is earned. See *John M. King*, 26 B. T. A. 1158; affd., 69 Fed. (2d) 639; *Helen N.*

*Winchester, Administratrix*, 27 B. T. A. 798; *Gouverneur Morris*, 31 B. T. A. 178; *Albert J. Houston*, 31 B. T. A. 188. The controlling principle is that as between husband and wife:

\* \* \* when a right, legal or equitable, is acquired whether before or during marriage, all things of value into which the initial right develops by the performance of conditions, the running of time or the like, or into which it is converted by an assignment, or, if the initial right rests in obligation, all that which is obtained through the performance, discharge, satisfaction, enforcement or assignment of the obligation, are deemed in law to have been acquired as of the date of the acquisition of the initial right, and take the character, as separate or common, of that right. [Community Property—McKay, §517.]

Preston performed services for which he received a part of the Herminghaus fee prior to July 29, 1927, the effective date of section 161 (a) of the Civil Code of California. He performed no services under the contract after that date. Since Preston would have been taxable upon the fees if they had been received prior to the effective date, he is likewise taxable upon those received after that date; for the amendment to the Civil Code did not serve to change separate property into community property.

We are therefore of the opinion that John W. Preston is liable to income tax in 1930 upon the entire amount of $51,746.19 collected by him in 1930, and that Sara R. Preston is not liable to income tax in respect of any portion of that amount.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

Murdock and Mellott dissent.