SPENCER THORPE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 97266.   Promulgated August 29, 1940.

*A. Calder Mackay, Esq.*, for petitioner.
*Byron M. Coon, Esq.*, and *R. T. Miller, Esq.*, for the respondent.

## OPINION.

SMITH: In this proceeding the petitioner admits that he realized a gain on the above transaction in the amount of $35,000, less the amount of $7,395 which he paid as a commission in securing the sublease, but he contends that the transaction giving rise to this gain was in substance and effect a sale or exchange of a capital asset, or capital assets, comprising his property rights in the leasehold agreement of October 1, 1924, and the surety bond given in connection therewith, and that the amount of his gain on the transaction is taxable at the capital gain rates as provided for in section 117 of the Revenue Act of 1934.

Section 117 of the Revenue Act of 1934 reads in part as follows:

SEC. 117. CAPITAL GAINS AND LOSSES.

(a) GENERAL RULE.—In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

\* \* \* \* \* \* \*

(b) DEFINITION OF CAPITAL ASSETS.—For the purposes of this title, "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other

property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

Granting that the petitioner's interest in the leasehold agreement and in the surety bond given in connection therewith constituted property rights which might be classified as capital assets, we do not think that there was in any sense "a sale or exchange" of those property rights. In substance the petitioner merely agreed to relieve his lessee and the lessee's surety of the obligation to erect a new building on the leased premises in consideration of the lessee's payment of $35,000 in cash. The lease itself was not sold or exchanged or canceled, but was merely amended so as to eliminate the provisions pertaining to the erection of the new building.

We held in *Walter M. Hort*, 39 B. T. A. 922, that the complete cancellation of a lease for a consideration paid to the lessor was not a sale or exchange of the lease and that the amount received by the lessor for such cancellation was ordinary income and not a capital gain.

In *Fairbanks* v. *United States*, 306 U. S. 436, the Supreme Court held that the redemption by a corporation of its outstanding bonds before their maturity date was neither a sale nor an exchange within the commonly accepted meaning of the words.

In *Hale* v. *Helvering*, 85 Fed. (2d) 819, it was held that a compromise settlement of promissory notes for an amount less than their face value was not a sale or exchange of capital assets giving rise to a capital loss deduction. In its opinion the court said:

* * * There was no acquisition of property by the debtor, no transfer of property to him. Neither business men nor lawyers call the compromise of a note a sale to the maker. In point of law and in legal parlance property in the notes as capital assets was extinguished, not sold. In business parlance the transaction was a settlement and the notes were turned over to the maker, not sold to him. In *John H. Watson, Jr.* v. *Commissioner of Internal Revenue*, 27 B. T. A. 463, overruling *Henry P. Werner* v. *Commissioner of Internal Revenue*, 15 B. T. A. 482, it was held that the payment at maturity, of the face amount of bonds purchased at a premium, was not a sale or exchange resulting in a capital loss. If the full satisfaction of an obligation does not constitute a sale or exchange, neither does partial satisfaction. * * *

We do not think that the petitioner's agreement to accept a compromise payment of $35,000 in settlement of his claim against his lessee, and the lessee's surety, for breach of a covenant of the lease was in any sense a sale or exchange of a capital asset.

Petitioner submits that the amount of $7,395 which he paid as a commission in subleasing the property to Barker Bros., Inc., constituted a part of the cost of the sublease, or the surety bond, or both, and should be applied against the $35,000 which he received in the transaction. This would be true if the payment of the $35,000 had been received in a sale or exchange or other disposition of the sublease

but, as we have found, that is not what took place. The sublease was not disposed of by the petitioner, but is still held by him. Moreover, there is no basis for an allocation of any portion of the $7,395 commission to that feature of the leasehold agreement pertaining to the erection of the building of the sublessee.

We find no error in the respondent's determination that the entire amount of $35,000 represented taxable gain in 1935.

A further contention is made by the petitioner, that in any event the amount of $35,000 constituted community income under the laws of the State of California and is taxable to him and his wife in equal shares. Although the petitioner and his wife filed separate income tax returns for 1935, it does not appear that any portion of the amount of $35,000 was reported by the wife in her return.

It is plain from the facts above set forth, we think, that the leasehold interest which gave rise to the income in dispute was community property. It does not follow, however, that such income is not taxable to the petitioner in its entirety. For the law is well settled that the income from community property in the State of California acquired prior to July 29, 1927, the effective date of the amendment to the code of California conferring a vested interest in community property upon each spouse (sec. 172 (a) of the California Civil Code), is taxable in its entirety to the husband. *Hirsch* v. *United States*, 62 Fed. (2d) 128; certiorari denied, 289 U. S. 735; *Helen N. Winchester, Administratrix*, 27 B. T. A. 798; *Gouverneur Morris*, 31 B. T. A. 178; *Clara B. Parker, Executrix*, 31 B. T. A. 644; *Estate of J. Harold Dollar*, 41 B. T. A. 869. Since the petitioner acquired the original leasehold interest as well as the sublease to Barker Bros., Inc., prior to July 29, 1927, all of the income therefrom is taxable to him individually.

It cannot be questioned, we think, that the $35,000 payment which the petitioner received from Barker Bros., Inc., was income arising from this leasehold interest. This amount was paid to the petitioner by his sublessee in settlement of its obligations under the leasehold agreement. In this respect it was no different from the rents or other revenue received under the leasehold agreement. In *Sara R. Preston*, 35 B. T. A. 312, 322, we said: .

The Board has consistently held that the test of when property is acquired for the purpose of determining whether or not it is community or separate property is not the time of the vesting of the property in the husband or receipt of the income therefrom, but the time of the inception of the rights whereby income is earned. See *John M. King*, 26 B. T. A. 1158; affd., 69 Fed. (2d) 639; *Helen N. Winchester, Administratrix*, 27 B. T. A. 798; *Gouverneur Morris*, 31 B. T. A. 178; *Albert J. Houston*, 31 B. T. A. 188. The controlling principle is that as between husband and wife:

* * * when a right, legal or equitable, is acquired whether before or during marriage, all things of value into which the initial right de-

velops by the performance of conditions, the running of time or the like, or into which it is converted by an assignment, or. if the initial right rests in obligation, all that which is obtained through the performance, discharge, satisfaction, enforcement or assignment of the obligation, are deemed in law to have been acquired as of the date of the acquisition of the initial right, and take the character, as separate or common, of that right. [Community Property—McKay, § 517.]

We sustain the respondent in his determination that the entire amount of $35,000 is taxable to the petitioner in 1935 as ordinary income.

*Decision will be entered for the respondent.*