Estate of Harold L. Abell, Deceased, Eleanor D. Abell, Executrix v. Commissioner.
Estate of Harold L. Abell v. Commissioner
Docket No. 8114.
United States Tax Court
1946 Tax Ct. Memo LEXIS 36; 5 T.C.M. (CCH) 969; T.C.M. (RIA) 46265; November 13, 1946
Robert J. Bird, Esq., for the petitioner. Clay C. Holmes, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $10,105.42 in income tax of Harold L. Abell for the calendar year 1943. The only assignment of error contained in the amended petition is as follows: Respondent erred in determining and holding that the decedent was not entitled to compute his tax for 1943 pursuant to the provisions of Section 107 of the Internal Revenue Code. The brief of the petitioner contains no argument in support of that assignment of error and it must be assumed *37 that it is no longer urged. The only argument advanced in the petitioner's brief is that $25,000, received by the decedent in July 1943 from Crum & Forster, Inc., pursuant to a contract of June 16, 1928, represented proceeds from the sale or exchange of a capital asset with a basis of zero and was taxable as a capital gain under section 117. Findings of Fact Harold L. Abell was an individual who filed his tax return for 1943 with the collector of internal revenue for the 28th district of New York. He died on May 7, 1945. The decedent was survived by his wife and two minor children. The wife consulted a lawyer in Buffalo immediately after the death of her husband and authorized him to take such action as might be necessary to protect her interests, both individually and as executrix under the decedent's will. The notice of deficiency was mailed to the decedent on February 19, 1945, and the 90 day period within which a petition could be filed was about to expire. H. A. Mihills, proceeding under authority from the lawyer just described, filed a petition on May 19, 1945, which he signed and attempted to verify. Letters testamentary were issued to Eleanor D. Abell, the decedent's *38 widow, on May 28, 1945. An amended petition was filed on June 13, 1946, signed by Mihills and another, and verified by the executrix. The decedent was the president of the Union Fire Insurance Company in 1927. That company was doing a lot of reinsuring for another firm known as Crum & Forster, Inc. The latter offered to buy a controlling interest in Union for $300 a share. The stockholders of Union were notified of the offer and the decedent entered into an agreement to deliver to Crum & Forster, Inc., a controlling interest in Union. The decedent entered into an agreement with Crum & Forster, Inc., on April 16, 1928, in which it was recited that the decedent was about to sell a majority of the outstanding stock of Union to Crum & Forster, Inc., in which the latter agreed to pay the decedent at the rate of $10,000 annually for ten years from July 1, 1928, but from those payments there was to be deducted any salary or compensation, other than director's fees, which the decedent might receive from Union or for any services which he might render to Union or the company into which it might be merged, as well as all dividends in excess of $2,610 which he might receive upon the equivalent *39 of 261 shares of Union stock which might be issued to him by the company into which Union might be merged. It was further provided that the obligation to pay $10,000 annually might be cancelled at any time after July 1, 1938, upon the payment of $50,000 to the decedent, and after July 1, 1943, by the payment of $25,000. The obligation to pay the decedent was to terminate upon his death or upon the insolvency of Union or of the company into which it might be merged. The same parties entered into another agreement dated June 16, 1928. This agreement cancelled the agreement of April 16, 1928, "which said agreement relates to the compensation to be paid by the said Crum & Forster, Inc., to the said Harold L. Abell" and provided for the payment to him annually of $10,000 from July 1, 1928 to July 1, 1931, $8,800 for the next year, $7,600 for the next year, and $6,500 annually from July 1, 1933 until the death of Harold L. Abell. It was further provided that there was to be deducted from those payments any salary for services which Abell might receive from Union, or the company into which it might be merged, as well as dividends in excess of $2,610 annually upon the equivalent of 261 shares *40 of Union which he might receive from the company into which Union might be merged. It was further provided that Abell would not have to devote any time or attention to the affairs of any company with which Union might be merged other than such time as he might elect to devote there-to, "and for such service as he may perform as such officer he shall be paid such compensation as the Crum & Forster, Inc., may from time to time determine." It was further provided that the obligation of Crum & Forster to make the payments under the agreement might be cancelled at any time after July 1, 1938, by the payment of $50,000, and after July 1, 1943, by the payment of $25,000. The obligation was to terminate upon the death of Abell or upon the insolvency of Union or the company into which it might be merged. It was understood in April 1928 that Union would be merged with Crum & Forster. The decedent was to become an officer of the merged company. Union continued to operate separately for a year or so and then was merged with the New York State Fire Insurance Company, which was later merged with the Richmond Insurance Company. The decedent was made vice-president of Richmond. The decedent was *41 paid a salary by Richmond, which was deducted from the amount which he received from Crum & Forster under their contract. The decedent received a final payment of $25,000 in settlement of the contract with Crum & Forster. That payment was received on July 1, 1943. Opinion MURDOCK, Judge: The respondent moved to dismiss this proceeding for lack of jurisdiction because the original petition was not filed by any one acting on behalf of the person to whom the notice of deficiency was addressed, or upon behalf of his personal representative after his death. That motion was denied because it appears that the petition was filed by one authorized by the decedent's widow who was named as his executrix and who promptly qualified as executrix and thereafter ratified the acts of her agent in filing the original petition. The petition in this case is inartistically drawn. It contains only one assignment of error. The petitioner has abandoned that assignment of error by failing to press it in her brief. Judgment for the respondent could properly be entered at this point. However, the amended petition under the statement of facts in paragraph 6 contains what was apparently intended to be an *42 alternative assignment of error claiming that the respondent erred in failing to recognize the decedent's rights under his agreement with Crum & Forster as a capital asset which was held for more than six months, and in failing to compute his gain on the sale or exchange of those rights under the capital gain provisions of the statute. That is the only issue urged by the petitioner in her brief. The petitioner argues that the contract was property and a capital asset, since it was in the nature of an annuity. A witness explained that the decedent had practically sold his job when he sold the stock and the annual payments were arranged to make up for that circumstance. The petitioner argues that the contract was not one of employment and must be regarded as a capital asset. The respondent argues that it was not a capital asset. Cf. Shuster v. Helvering, 121 Fed. (2d) 643, affirming 42 B.T.A. 255. However that may be, it was not "sold or exchanged" and thus did not result in capital gain. Fairbanks v. United States, 306 U.S. 436; Hale v. Helvering, 85 Fed. (2d) 819; Shuster v. Helvering, supra; Spencer Thorpe, 42 B.T.A. 654; *43 Bingham v. Commissioner, 105 Fed. (2d) 971. Section 117 (a) (4) defines "long-term capital gain" as the "gain from the sale or exchange of a capital asset held for more than 6 months." It seems obvious that the transaction here in question did not come under section 117 (a) (4). The decedent made no sale or exchange of any capital asset. He entered into a contract and the other party to the contract discharged it in accordance with its terms. The last thing that it did was to pay the petitioner $25,000 in 1943 as it was authorized and required to do as one of the alternatives agreed to in the contract. The contract was merely discharged by the payment. There was no sale or exchange of any property. Thus, even if we were to regard this issue as properly raised by the pleadings, the petitioner would lose. Decision will be entered for the respondent.