[Sac. No. 4683. In Bank.—July 18, 1933.]

In the Matter of the Estate of THOMAS L. LEWIS, Deceased. ESTHER P. WASSON et al., Appellants, v. CHARLES MAXFIELD et al., Respondents.

Elliott, Atkinson & Sitton for Appellants.

Evan J. Hughes for Respondents.

CURTIS, J.—This appeal is from a decree of distribution in the estate of Thomas L. Lewis, deceased, by the two sisters of said deceased. The controversy is between the heirs, or blood relatives of said deceased, and the heirs-at-law of the wife of said deceased, whose death occurred some eighteen years prior to the death of the deceased, Thomas L. Lewis. The point involved is whether certain property left by the deceased was his separate property, or the community property of himself and his predeceased wife, Melvina Maxfield Lewis. The property involved is an eighty-acre tract of land and $6,233.31 in money. Other property, both real and personal, was owned by said deceased at the time of his death, but it was of only slight value, and by decree it was distributed in the same manner as the court distributed the sum of $3,103.31, hereinafter mentioned. If the court made a legal distribution of said sum of $3,103.31, then the decree in so far as it relates to this miscellaneous property should not be disturbed.

■ The court found that thirty-two per cent of said eighty-acre tract of land was separate property· and that sixty-eight per cent thereof was common property of Thomas L. Lewis and his deceased wife. This property was conveyed to Lewis by Robert Maxfield by deed dated March 27, 1893, after his marriage and during the lifetime of his wife, who died May 7, 1910. The evidence shows that Lewis purchased for $2,500 said land and that he contributed $800 of his separate property toward the purchase price thereof and borrowed the balance from a man named Jackson. The sum of $800 is thirty-two per cent of $2,500. Evidently the trial court concluded that this loan was paid off by Lewis from community funds. Appellants make no direct contention that it was not, except that they do contend that Lewis had between $1200 and $1500 in money at the time of his marriage, and this sum may have gone into the purchase price of said land. There is some evidence that years after Lewis' marriage he made certain statements which might bear out appellants' contention that. Lewis possessed in the neighborhood of $1250 in money at the time of his marriage. On the other hand, there is evidence in the record to the effect that Lewis was practically without any money or property at the time of his marriage. A brother-in-law of the deceased so testified, and he is corroborated by Annie Maxfield, who testified that when Lewis returned from his honeymoon he had but $40. As the evidence as to Lewis' possession of any substantial sum of money or property at the time of his marriage is conflicting, it must be construed in favor of sustaining the decree. The trial court evidently was of the opinion that Lewis was without funds at the date of his marriage, and the evidence amply supports such a conclusion.

■ Appellants further contend that the finding of the court regarding the community character of said eighty-acre tract was erroneous, as the trial court in reaching such conclusion disregarded the effect of a deed of said eighty-acre tract made to Lewis by his mother at or about the time Lewis acquired said property from Robert Maxfield. The theory of appellants appears to be that Lewis only acquired a one-half interest in said eighty acres by his deed from Maxfield and that the other one-half interest in said real property came to him by deed of gift from his mother. If

this theory could be sustained, then the separate interest of Lewis in said land would be sixty-six per cent thereof instead of thirty-two per cent as found by the trial court. But the contention of appellants that Lewis received one-half interest in said real property, or any interest therein, through the deed from his mother cannot be sustained. The evidence shows that this tract of land was formerly owned by Thomas Morris, Lewis' grandfather. On the death of Morris, Lewis was the administrator of his estate. He returned the whole of this eighty-acre tract of land in the inventory as property of the estate, appraised at $3,000. As administrator of the estate he sold it to Robert Maxfield for $2,400, and subsequently purchased it from Maxfield for $2,500. In all the proceedings of the estate, and in the two deeds through which he acquired said property, it was described as the full eighty acres, and not as any lesser interest. It does appear that there was possibly a cloud upon the title to said real property caused by a confusion in a prior deed by which Thomas Morris acquired title thereto, and Lewis' mother, who was the daughter of Thomas Morris, acquired title to an adjoining eighty-acre tract. Evidently the deed from Lewis' mother to Lewis was given simply to clear up this cloud on the title to said land, and no interest in said land passed from her to Lewis by said deed. This disposes of appellants' contention that the court erroneously found that only thirty-two per cent of said eighty-acre tract of land was the separate property of said deceased.

We will now direct our attention to the sum of $6,233.31 distributed by the decree of distribution. The court found that $3,130 of this amount was "community property of said deceased and Melvina Maxfield Lewis" and that of the balance (or $3,103.31), thirty-two per cent was "the separate property of Thomas Lewis, and sixty-eight per cent thereof was the common property of said Thomas Lewis and Melvina Maxfield Lewis". At the date of the death of Melvina Maxfield Lewis, Thomas L. Lewis had on deposit the sum of $1385. This money the court found was at that date the community property of Lewis and his wife. The probate court computed interest on this sum from the date of the wife's death to the date of the death of Lewis, eighteen years, at seven per cent per annum, the principal

and interest amounting at the death of Lewis to $3,130, which sum the court distributed as community property. We see no objection to this method of the probate court in ascertaining the accumulations to said original sum of $1385. Especially is this true in view of the undisputed evidence in the case that Lewis during his lifetime, both before and after the death of his wife, was continuously engaged in loaning money, and usually at rates of interest from eight per cent to ten per cent. Appellants call to our attention the state of Lewis' bank account after the death of his wife, which shows that frequent withdrawals therefrom were made by Lewis, and as a result thereof said account was reduced in September, 1911, to $80. But the fact that Lewis made these withdrawals is no proof that the money so withdrawn was spent or otherwise dissipated by Lewis. It is more than likely, judging from the buisness habits of Lewis, that the money withdrawn from the bank was loaned out by him at rates of interest even higher than seven per cent per annum. We find no justification for disturbing the finding of the court regarding said sum of $3,130.

As to the balance of the money on hand for distribution, that is the sum of $3,103.31, it will be noted that the probate court followed its finding regarding the eighty-acre tract of land, and found that thirty-two per cent of this money was separate property and sixty-eight per cent was community property, and distributed it accordingly. The only theory upon which this finding of the court can be sustained is that Lewis, after the death of his wife, engaged in no gainful occupation, and that during that period of time, from 1910 to 1928, Lewis' sole income was from the property owned by him at his wife's death. There is evidence to sustain this theory of the case. It is not uncontradicted, but it is substantial and is sufficient to justify the implied finding of the trial court that there was no accumulations to Lewis' property during this period due to his own personal efforts. While some of the witnesses for the appellants testified that Lewis after his wife's death was seen to be performing manual labor, the preponderance of evidence was to the effect that after Mrs. Lewis' death, Lewis to all intents and purposes led a retired life. He rented his farm

to Japanese, and lived off of the income of his property. The evidence on this point may be summed up in the testimony of Charles F. Maxfield, his brother-in-law. This witness was a life-long acquaintance of Lewis and the two lived near each other during practically the lifetime of Lewis. Maxfield testified in answer to a question as to what work Lewis did after the death of Mrs. Lewis: "Just rented the vineyard out to Japanese—just chored around the house —done a little garden work about the trees and flowers— that is about all. He said he never would work."

This disposes of all questions raised by the appellants.

The decree is affirmed.

Shenk, J., Thompson, J., Seawell, J., Langdon, J., Waste, C. J., and Preston, J., concurred.