153 F.2d 553 (1945)
TODD et al.
v.
COMMISSIONER OF INTERNAL REVENUE.
No. 10915.
Circuit Court of Appeals, Ninth Circuit.
December 13, 1945.
Order December 17, 1945.
Rehearing Denied January 17, 1946.
*554 R. E. Brotherton and Aaron Turner, both of Oakland, Cal., for petitioner.
Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Helen R. Carloss, Fred E. Youngman, and Helen Goodner, Sp. Assts. to Atty. Gen., for respondent.
Before DENMAN, STEPHENS, and BONE, Circuit Judges.
DENMAN, Circuit Judge.
This is a review of a decision of the Tax Court determining deficiencies in the income taxes for the calendar years 1940 and 1941 of each of the petitioners, for over twenty years equal partners under the name of Western Door and Sash Co., in a business of buying and selling, in the State of California, lumber products such as doors, wooden frames and sash.
Both partners have been married and living with their wives in California since before July 29, 1927, when the present community property law in California was enacted, and the wives acquired a half-interest in the earnings of their husbands. United States v. Malcolm, 282 U.S. 792, 51 S.Ct. 184, 75 L.Ed. 714.
The parties here are agreed that on January 1, 1936, the partners had invested in their lumber business as their separate property $144,366.81, and that at least that sum remained as their separate capital in the business in 1940 and 1941, the tax years here in question.
The capital in the business had increased by plowing back much of its earnings in 1936, 1937, 1938, and 1939, until on January 1, 1940, it amounted to $226,890.77 and on January 1, 1941, to $285,678.98.
The dispute between the parties concerns the portion of the income of these last two years attributable (a) to capital, the separate income of the husbands, and (b) the amount arising from the taxpayers' management of the business. All the income from capital contributed by the husbands is taxable to the husbands as separate property, plus one-half of the income from managing the business.
The Commissioner found that a very considerable portion of the increased capital came from leaving in the business, in each of the years from 1936 to 1939 inclusive, the money product of the capital as well as a portion of that from the managerial activities of the taxpayers, and the evidence sustains the finding.
It is contended by the taxpayers that despite this constantly increasing capital from both sources, the Commissioner and the Tax Court erred in refusing to hold that the limit of the separate capital investment for 1940 and 1942 was what it was on January 1, 1936, $144,360.81. With this we cannot agree. The income from the separate property left in the business remains separate property and is entitled to its share of the income thereafter.
Taxpayers further contend that the separate property capital is entitled to a return not exceeding the legal rate of interest in California of 7%, and that in no event is it entitled to a return exceeding 8% for either year.
*555 Taxpayers properly summarize the law respecting the return on the separate capital of one of the California spouses:
"But the California rule of property law is that where the spouse has an investment in a business at the time of marriage which he continues to conduct during marriage, that investment continues to be his separate property. What part of the subsequent profits is separate income and what part thereof is community income is to be determined by the facts in the case. Whatever arises from the use of the capital by the community is separate property, and whatever arises from the personal activity, ability, or capacity of the spouse is community property."
The statement then continues:
"The California rule of property law is that where the separate capital investment of the spouse is definitely determined in amount as of the date of marriage, the income attributable thereto is interest thereon at a rate not in excess of the legal interest rate of seven percent unless the facts in the case show that it is entitled to a greater return than legal interest." [1]
Under the federal income tax law it is the duty of the Commissioner of Internal Revenue to determine from "the facts in the case" the amount of the return on the taxpayer's capital. He has determined that the facts shown that the product of the capital is not only in excess of 7%, the legal rate in California, but much more than 8%.
We think there is evidence from which the Commissioner and the Tax Court properly could find that the return on the capital exceeded the California legal rate of 7% for the tax years in question. There is evidence from which the Commissioner and Tax Court could infer that the lumber business is a highly fluctuating one of large profits, succeeded by large losses  that is, a merchandising business in which a higher rate of return is necessary in good years to offset the losses of bad years.
It also appears that in 1940 the war in Europe and war preparations in this country caused a constant increase in demand for lumber, and with it a corresponding increase in prices and in value of inventories.
It was stated by one of the partners that the money was left in the business as "a sort of investment" for the "inflation in inventory." They "let it lay there in the business in the way of inventory." He stated that the taxpayers could have done the same volume of business with half the inventories but the fact is that they preferred to take the war-caused increasing value in the inventories. Hence, as stated, the Commissioner and the Tax Court were warranted in inferring that there was a substantial gain in capital value of inventory as distinguished from earnings from new business obtained.
The Commissioner's method of allocation between the separate capital income and the managerial community earnings is a rational one. The capital of the business was constantly increasing. Eight percent of the average capital balance in each of these years is held the base of the capital earnings. Salaries for services are found annually for the base of the community earnings. The two are added together and the percentage each base bares to the total constitute the proportions of the total income attributable to capital and to services.
Beginning in 1936, when the capital on January 1st was admittedly $144,360.81, the average capital for the year was computed as $151,980.71. Upon this the 8% was computed at $12,158.46. This was added to the $10,000 salary, making a total of $22,158.46. The percentage of the income attributable to capital earnings is 54.87%, and to managerial earnings is the remaining 45.13%.
54.87% of the 1936 partnership income of $26,990.92 is $14,809.92 attributable to capital earnings. This was left in the business and added to the partnership capital of 1937.
The 45.13% of $26,990.92 is $12,818 attributable to community earnings. However, all this was not left in the business. $11,763 of it was taken out as personal expenses  that is, under the California law presumed taken from the community income. Van Camp v. Van Camp, 53 Cal.App. 17, 25, 199 P. 885. The remainder was left in the business as community capital to share in the total earnings of future years as taxable community income.
Pursuing this method for the succeeding years, the Commissioner and the Tax Court found the partners' separate capital of the *556 partnership in 1940 to be increased to $242,380.68 and that the community had left in the business, above withdrawals of living expenses, $13,904.19.[2]
Applying the above formula of the shares of the 8% on capital added to an increased salary factor of $15,000, the Commissioner and the Tax Court fixed the taxes and deficiencies *557 for each of the equal partners on the total partnership income of $46,204.96, as follows:

 Percent Total
 (Per Exhibit Total Community Husband's Wife's
 A) Income Income Share Share
 Income from husband's separate
 capital .................... 54.62 $25,237.14 $25,237.14
 Community income:
 Community capital .......... 3.13 1,446.22 $ 1,446.22 723.11 $ 723.11
 Income from services ....... 42.25 19,521.60 19,521.60 9,760.80 9,760.80
 ______ __________ __________ _________ __________
 Totals ....................... 100% $46,204.96 $20,967.82 $35,721.05 $10,483.91
 Reported on returns........... 29,284.21 16,469.97
 __________ __________
 Net adjustment................ $ 6,436.84 $(5,986.06)
 __________

For 1941 there was a similar computation showing a deficiency in the husband's income of $8,515.97.
It is claimed that the figures showing the average of capital balances during the years 1940 and 1941 fail to show certain sums attributable to the separate and community shares of the capital. Since the Commissioner's plan of allocation is a rational one, the burden of showing error in computing in its application is upon the taxpayers. Helvering v. Taylor, 293 U.S. 507, 515, 55 S.Ct. 287, 79 L.Ed. 623; Lucas v. Kansas City Structural Co., 281 U.S. 264, 271, 50 S.Ct. 263, 74 L.Ed. 848; Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212. This they have failed to do.
This case was argued and submitted to us by both parties on the theory that the findings in the following assignments of error were actually made by the Tax Court:
"6. The evidence does not support the finding that the capital invested in the partnership business had earned or was entitled to be credited with a return thereon for either of the years 1940 or 1941 greater than eight per cent which the Commissioner determined and the Court found to be a fair return thereon.

* * * * * *
"8. The evidence does not support the finding that the capital invested in the partnership business had earned or was entitled to be credited with a return thereon for either of the years 1940 or 1941 greater than seven per cent." (Emphasis supplied.)
No such findings of fact were made by the Tax Court or findings substantially like them. The case is ordered remanded to the Tax Court to make findings with regard to the issue as to the respective amounts attributable to capital and to the petitioners' management of the business and its decision thereon, having in view the agreement of the parties here that such findings were made. Cf. Oliver v. Commissioner, Jan. 1, 1945, 4 T.C. 684.
Remanded.
STEPHENS, Circuit Judge (dissenting).
It is the law of the State of California that earnings "plowed back" into the capital of the business shall be deemed to have earned 7% and no more unless the evidence introduced in the case indicates that the 7% rule would produce an erroneous result.
In this case the disclosure of facts to the Commissioner was comprehensive, and we may take it that he determined the 7% rule to be non-applicable. Upon such determination he proceeded to apply a formula designed for quite a different use. This produced a deficiency against the taxpayer.
A review before the Tax Court was had and that court approved the deficiency finding but, as specifically stated in its opinion, upon a presumption and not upon the merits of the controversy.
We have no doubt but that it is the law that a taxpayer cannot merely assert the incorrectness of the Commissioner's determination and thereby shift the duty of justification to the Commissioner. The presumption of correctness would, in these circumstances, be fully effective. But these are not the circumstances of this case. The taxpayer accepted the statement of facts transmitted to the Tax Court as the basis of the Commissioner's determination and affirmatively asserted and argued that upon *558 this statement, unaided by further facts, the Commissioner was clearly wrong.
The Tax Court in its opinion says "* * * we think that the burden can not be so shifted to the Commissioner. His determination effectually overcomes the ordinary presumptions of law, and the petitioners [taxpayers] continue to have the duty of going forward with their proof. [Citation.] This duty the petitioners have completely neglected, by reason of which the determination of the Commissioner must stand."
Can it be that the Commissioner's determination is locked against the Tax Court's inquiry into the Commissioner's determination and the evidence and the theory upon which it is based, when legal defects are alleged and asserted and pointed out by the taxpayer in an appeal to that court? Before he can have the Tax Court's review, must he introduce some additional evidence though he is satisfied with the evidence already in? Mayhap there is no additional material and relevant evidence to introduce.
The necessary and practical, though easily disappearing, presumption in favor of the correctness of the Commissioner's determination does not have this illogical reach. The Tax Court in its busy application has mistakenly applied the presumption in the disposition of the case.
The case should be reversed and remanded to the Tax Court with instructions to consider and find upon the issues raised upon the evidence and the pleadings, not excluding such additional evidence as may be proffered subject, of course, to the discretion of the court and to the ruling of the court as to its admissibility.

Order.
PER CURIAM.
The decision herein (filed December 13, 1945) is without prejudice to a motion to introduce further evidence, nor to the Tax Court's independent judgment upon the facts now or hereafter introduced.

Upon Petition for Rehearing.
Petitioners seek a rehearing on the ground, among others, that the Tax Court erred in its calculations in determining the income of the respective taxpayers. Under our decision returning the case to the Tax Court, the petitioners are free to urge such a contention there.
Petitioners further contend that in computing the income for each year and attributing to the investment of each the separate and community property the annual income from the capital of each, such federal annual accounting requirement in effect creates compound interest. They cite Pereira v. Pereira, 156 Cal. 1, 103 P. 488, 23 L.R.A.,N.S., 880, 134 Am.St.Rep. 107 and Estate of Lewis, 218 Cal. 526, 530, 24 P.2d 159. In the latter case, in determining at the death of one of the spouses, the earning of the community property, simple interest was allowed for a period of 18 years. The California court had before it no such problem as that of federal or state (as in California) computation of annual income for income tax purposes, nor was such a question suggested in these cited opinions.
The petition for rehearing is denied.
Judge STEPHENS adheres to the position taken in his opinion heretofore filed.
NOTES
[1] Pereira v. Pereira, 156 Cal. 1, 7, 11, 12, 103 P. 488, 23 L.R.A.,N.S., 880, 134 Am.St.Rep. 107; Witaschek v. Witaschek, 56 Cal.App.2d 277, 281, 132 P.2d 600.
[2] 2 Exhibit A
 Computation of Percentages to be Used in Allocating the Western Door & Sash Company Partnership Income Between the Partners and Their Wives
 A B C D E F G H I J
 Income from
 Average Capital Salary Allowance (Per cent Income from Services Withdrawals
 Balance 8% on Capital & (Both Net Profit of B to Capital Amount (Per cent of Amount from Community
 Year (1/1 to 12/31) Balance Partners) Total (per Books) D) (D × E) C to D) (H × E) Income
 1936 $151,980.71 $12,158.46 $10,000.00 $22,158.46 $26,990.92 54.87 $14,809.92 45.13 $12,181.00 $11,763.02
 1937 173,161.06 13,852.88 12,000.00 25,852.88 39,445.09 53.58 21,134.68 46.42 18,310.41 12,312.20
 1938 196,136.58 15,690.92 12,000.00 27,690.92 39,701.88 56.66 22,495.09 43.34 17,206.79 20,883.72
 1939 216,218.22 17,297.46 12,000.00 29,297.46 36,118.03 59.04 21,324.08 40.96 14,793.95 14,772.92
 1940(b) 256,284.87 20,502.79 15,000.00 35,502.79 81,777.20(c) 57.75 47,226.33 42.25 34,550.87 22,988.99
 1941(e) 320,387.85 25,631.03 15,000.00 40,631.03 87,254.09(f) 63.08 55,039.88 36.92 32,214.21 17,836.76
 Allocation of Income from Capital between husband's separate income and K L
 Community Income:
 Percent Excess of Community
 Average Capital of Total Income to
 1940 Balance Percentage Withdrawals Balance of
 (To Community Community
 Community ......................... $242,380.68 54.62 Year Capital) Capital
 Husband's ......................... (a) 13,904.19 3.13 1937 $ 5,998.21 $ 5,998.21
 ___________ _____ 1938 (3,676.93) 2,231.28
 Totals ........................ (b) $256,284.87 (c) 57.75 1939 21.03 2,342.31
 ___________ _____ 1940 11,561.88(a) 13,904.19
 1941 1941 14,377.45(d) 28,281.64
 Husband's ......................... $292,106.21 57.51
 Community ......................... (d) 28,281.64 5.57
 ___________ _____
 Totals .......................... (e) $320,387.85 (f) 63.08
 ___________ _____