[S. F. No. 4882. In Bank.—June 30, 1909.]

## ANNA AGNES PEREIRA, Respondent, v. FRANK PEREIRA, Appellant.

DIVORCE—AGREEMENT FOR DIVISION OF PROPERTY IN EVENT OF FUTURE DELINQUENCY OF HUSBAND—CONTRACT AGAINST PUBLIC POLICY.— An agreement between a husband and wife, executed pending an action for divorce instituted by her, whereby she waived the pending cause of action and agreed to dismiss it, and he agreed that in the event he should thereafter so conduct himself as to give her a new cause of action for divorce, and she should establish the same in a subsequent action, he would pay her a specified sum of money, which she agreed to accept in full satisfaction of her property rights, is against public policy and void.

ID.—COMMUNITY PROPERTY—PROFITS OF SEPARATE ESTATE INVESTED IN BUSINESS—INTEREST ON CAPITAL.—Where at the time of his marriage a husband has a definite amount of his separate property invested as capital in his business, which he afterwards continues to carry on at great profit, in determining what portion of such profit is community property, it must be presumed, in the absence of evidence to the contrary, that some of the profits were justly due to the capital invested and would constitute his separate property, and that the amount thereof would be equivalent to at least the usual interest on a long investment well secured.

ID.—APPEAL BY HUSBAND FROM DIVORCE JUDGMENT—INCREASE OF PROPERTY AWARD TO WIFE.—Upon an appeal by the husband from a judgment of divorce, which determined that the community property was of a specified value and awarded the wife a three-fifths part thereof, the court cannot change the judgment by increasing the share of the community property given to her.

ID.—MODIFICATION OF JUDGMENT ON APPEAL—DEDUCTION OF SEPARATE PROPERTY—LEGAL INTEREST ON CAPITAL OF BUSINESS.—Where the

CLVI Cal.—1

trial court erred in including in such community property any portion of the profits of the business conducted by the husband properly to be credited to his separate property invested therein, and there was no evidence to show that such capital was entitled to a greater return than legal interest, this court may, on an appeal by the husband, upon the wife's application therefor, direct the judgment to be modified, so as to allow the husband, as part of his separate estate, interest at the rate of seven per cent on the amount of such capital.

ID.—INTERLOCUTORY JUDGMENT—PROPERTY RIGHTS MAY BE DETERMINED—CUSTODY OF CHILDREN.—Under the amendment of 1903 to sections 131 and 132 of the Civil Code, the trial court has the power, at the time of rendering the interlocutory judgment of divorce, to try and determine the issues between the parties to the action with respect to property and the custody of children. While this may, and generally should be done, the court has the power, under such amendment, as it always has had the power under previous laws, to postpone the trial and decision of such issues to any reasonable time after the rendition of the judgment of divorce, whether interlocutory or final.

ID.—POSTPONEMENT OF FINALITY OF INTERLOCUTORY JUDGMENT—PROPER PRACTICE.—The practice is to be commended of the trial court, in an action of divorce, determining all the issues in one trial and rendering an interlocutory judgment declaring the rights of the parties upon all the issues, and providing that the same should in all respects become final only at the time when the decree of divorce became final, in the mean time allowing temporary alimony.

APPEAL from an interlocutory judgment of the Superior Court of Alameda County in an action of divorce. William H. Waste, Judge.

The facts are stated in the opinion of the court.

Arthur J. Dannenbaum, and Meyer Jacobs, for Appellant.

Snook & Church, Charles S. Wheeler, and J. F. Bowie, for Respondent.

SHAW, J.—The plaintiff obtained an interlocutory judgment of divorce on the ground of extreme cruelty. This judgment also declared that the plaintiff should have three fifths of the community property when the divorce became final, that she should thereafter have custody of her minor child by the marriage, and it provided for temporary alimony to her and for the custody of the child during the time that would elapse

between the interlocutory judgment and the final judgment. The defendant appealed from this interlocutory judgment within sixty days after the rendition thereof. This appeal is presented upon the judgment-roll and upon a bill of exceptions containing the evidence.

It is conceded that the evidence was sufficient to justify the divorce and the award of the custody of the child to plaintiff. The claim of the appellant is that the court erred in the finding as to the amount of the community property and in excluding evidence relating thereto.

1. The first point to be noticed is the ruling of the court declaring void a contract between the parties relating to their property and the division thereof, and in refusing to enforce or consider it in that connection. We are of the opinion that the court properly refused to consider this contract on the ground that it was plainly against public policy. The present action was begun on January 21, 1905. A previous action of divorce on the ground of extreme cruelty consisting in large part of the same acts assigned in the present complaint was commenced by the plaintiff against the defendant on September 23, 1904. After that action was begun the parties became reconciled, resumed marital relations, and on November 1, 1904, the plaintiff dismissed the action. On November 4, 1904, in pursuance of negotiations begun before the dismissal but after the reconciliation, the contract in question was executed. It was dated November 1st and it recites that the previous action was then pending. Therein the plaintiff expressly waived the cause for divorce alleged in said complaint and agreed to dismiss the action. The contract further provided that none of the relatives of either party should settle in, be invited to, or visit the home without the consent of both parties; that if the husband should thereafter so conduct himself as to give the wife a new cause of action for divorce, and she should establish the same in a subsequent action against him for divorce or maintenance, the husband should thereupon pay to the wife ten thousand dollars, which should be a full satisfaction, settlement, and discharge of all claims of the wife in such action "for alimony, costs, counsel fees, support, maintenance of herself, homestead, homestead right, property and benefit of every kind and character." It also declared that "in the event of the institution of such subsequent action

all claims and demands by her or on her part in or to any moneys, property rights, or property, community or otherwise, now or hereafter owned or acquired by" the defendant, other than said ten thousand dollars "are hereby forever settled, liquidated, relinquished, released, waived and abandoned, and no claim, demand, or monetary or property benefit or relief shall ever be claimed, asserted or sought in, by or by reason of said subsequent action, should it be instituted, except only to the extent aforesaid."

The Civil Code provides that the husband and wife may enter into any engagement with the other respecting property which they might enter into if not married, subject to the law as to fiduciary relations in general (sec. 158) ; and that they may agree, in writing, to an immediate separation and may make provision for the support of either of them and of their children during such separation, but that they cannot by contract, otherwise alter their legal relations, except as to property. (Sec. 159.) There was in this contract no agreement for separation, and, hence, the agreement to pay ten thousand dollars cannot be upheld as a provision for the support of the wife on a separation, as provided in section 159. The real effect of the contract to pay the ten thousand dollars, so far as the husband is concerned, would be to provide against liability for a contemplated wrong to be subsequently inflicted by him· upon his wife, and to liquidate such liability in advance of the commission of the wrong. The evidence and findings show that the defendant was then possessed of property worth about seventy-seven thousand dollars, was engaged in a very lucrative business, and was receiving an income of about eleven thousand dollars a year which he had every reason to believe would continue. By this contract, if valid, he was left free to inflict upon his wife the most grievous marital wrongs, such as would compel her to obtain a divorce, secure in the protection of his contract that ten thousand dollars would satisfy all her claims against him of a pecuniary nature or in relation to the community property. If he should, after its execution, be moved by evil impulse to commit anew the offenses against his wife which first gave her cause for divorce, or other acts having the same legal effect, the existence of a valid contract of this sort could not but encourage him to yield to his baser inclinations, and inflict the injury. As it

was obviously adapted to produce this result, it is to be presumed that this was one of the inducements which made him desire its execution. The law does not countenance such agreements. "Any contract between the parties having for its object the dissolution of the marriage contract, or facilitating that result, . . . is void as *contra bonos mores.*" (*Loveren* v. *Loveren,* 106 Cal. 512, [39 Pac. 802], quoting *Phillip* v. *Thorp,* 10 Or. 494; *Beard* v. *Beard,* 65 Cal. 354, [4 Pac. 229] ; *Newman* v. *Freitas,* 129 Cal. 289, [61 Pac. 907].) In *Seeley's Appeal,* 56 Conn. 206, [14 Atl. 291], the court says: "Inasmuch as the state rests upon the family and is vitally interested in the permanency of a marriage relation once established, it, for the promotion of public welfare, and of private morals as well, makes itself a party to every marriage contract entered into within its jurisdiction, in this sense, that it will not permit the dissolution thereof by the other party thereto. Its consent in the form of a decree of its court passed after hearing in due process of law, is a prerequisite for a divorce. . . . Courts will not enforce any contract which is the price of consent by one party to the marriage relation, to the procurement of a divorce by the other." And, in reference to a similar agreement to that in the case at bar, the court in the case just cited said: "Presumably each party saw in that agreement an individual advantage; to him, in that he possibly paid her less thereby than the judgment of the court upon hearing would compel; to her, in that he refrained therefor from answering the allegations of her petition by proof, and thus possibly permitted a divorce which he could have prevented."

Before the contract was made, or its terms agreed to, the parties had made up their former differences and had become reconciled. It shows by its terms that it is not an agreement to settle property rights accruing by reason of a marital offense already perpetrated and complete as a cause for divorce. There is therefore no force in the claim, as applied to this case, that it is competent evidence, or valid as a settlement of such rights, even if it were conceded that such an agreement might under some circumstances be permitted to stand. The court also found that this contract was procured by the husband through undue influence and by fraud. Our conclusions upon the point that it was against public policy

makes it unnecessary to consider the sufficiency of the evidence to sustain these findings.

2. The court found that the community property of the parties was of the value of $57,664.77. It is claimed that this is not sustained by the evidence.

There is practically no conflict on the subject, there being no witness to that point except the defendant. The findings state that this property consisted of the real estate on which the defendant carried on business, which was of the value of forty-five thousand dollars, and certain money on hand, making up the remainder. The evidence shows that the plaintiff and defendant intermarried on April 19, 1900. At that time the defendant was, and he ever since has been, carrying on a saloon and cigar business, then producing a net income of about five thousand dollars annually. He owned the cigar and saloon stock and fixtures, worth in all about fifteen thousand five hundred dollars, and had, besides, some six thousand dollars in cash. Soon after the marriage he bought the home wherein the parties afterwards lived, paying twenty-seven hundred dollars therefor, and he afterwards expended thereon twenty-three hundred dollars in improving it. This home is adjudged to be his separate property and plaintiff is given no interest in it. A year and a half after his marriage he bought the property in which he was carrying on business at the price of forty thousand dollars. He paid in cash therefor five thousand dollars and afterwards, out of his income, he paid the balance of the price and accumulated the cash on hand at the time of the trial, in addition, amounting to over twelve thousand dollars. His net income at the time of the trial was about eleven thousand dollars a year. From the time of his marriage to the time of trial he allowed his wife seventy-five dollars a month to run the house and she made her own clothes. There is an unexplained discrepancy between the total amount of his income less the household expenses, and his total gains. He must have received more than he was willing to disclose, if his net income over household expenses amounted to as much as the money which he admits he has received, not allowing anything for his personal expenses.

The court may have believed that he had other property which he had succeeded in concealing. There was some justification for this inference, for he was caught in the act of at-

tempting to conceal $7,761 of the cash on hand by means of a New York draft which he had carried in his pocket for the four months preceding the trial. It appears, however, that the decision of the court was made upon the theory that all of his gains received after marriage, from whatever sources, were to be classed as community property, and that no allowance was made in favor of his separate estate on account of interest or profit on the fifteen thousand five hundred dollars invested in the business at the time of the marriage. This capital was undoubtedly his separate estate. The fund remained in the business after marriage and was used by him in carrying it on. The separate property should have been credited with some amount as profit on this capital. It was not a losing business but a very profitable one. It is true that it is very clearly shown that the principal part of the large income was due to the personal character, energy, ability, and capacity of the husband. This share of the earnings was, of course, community property. But without capital he could not have carried on the business. In the absence of circumstances showing a different result, it is to be presumed that some of the profits were justly due to the capital invested. There is nothing to show that all of it was due to defendant's efforts alone. The probable contribution of the capital to the income should have been determined from all the circumstances of the case, and as the business was profitable it would amount at least to the usual interest on a long investment well secured. (*Boggess* v. *Richards,* 39 W. Va. 576, [45 Am. St. Rep. 938, 20 S. E. 599]; *Trapnell* v. *Conkling,* 37 W. Va. 252, [38 Am. St. Rep. 30, 16 S. E. 570]; *Penn* v. *Whitehead,* 17 Gratt. 573, [94 Am. Dec. 478]; *Glidden* v. *Taylor,* 16 Ohio St. 509, [91 Am. Dec. 98].) We think the court erred in refusing to increase the proportion of separate property and decrease the community property to the extent of the reasonable gain to the separate estate from the earnings properly allowable on account of the capital invested.

It is true that the disposition of the community property by the superior court, in all particulars, including matters committed to its discretion, is subject to revision in this court on appeal. (Civ. Code, sec. 148; *Eslinger* v. *Eslinger,* 47 Cal. 64; *Brown* v. *Brown,* 60 Cal. 580; *Strozynski* v. *Strozynski,* 97 Cal. 192, [31 Pac. 1130].) In each of these cases the

supreme court increased the wife's share of the community property from one half, as given by the trial court, to three fourths. But the wife has not appealed and we cannot, upon the husband's appeal, change the judgment by increasing the share of community property given to the wife. The only error, in respect to community property, which we can consider upon this appeal by the husband, is the error in classing as community property that part of the gains which was derived from the "issues and profits" of his separate property (Civ. Code, sec. 163), the amount of which we cannot determine. It will be necessary to remand the case for a retrial of this issue. The court below will be free, upon such new trial, to apportion a larger share of the community property to the plaintiff, or to divide it between the parties in such shares as it shall deem just, under all the circumstances. The present division seems fair in point of fact.

3. The appellant further claims that, under the amendment of 1903 to sections 131 and 132 of the Civil Code, the court has no power, at or before the time of rendering the interlocutory judgment of divorce, to make any inquiry, finding, or decree with respect to the property rights of the parties, or with respect to any other subject connected with the divorce, except the right of the complainant to a divorce. Section 131 on this point is as follows: "In actions for divorce the court must file its decision and conclusions of law as in other cases and if it determines that no divorce shall be granted, final judgment must thereupon be entered accordingly. If it determines that the divorce ought to be granted an interlocutory judgment must be entered, declaring that the party in whose favor the court decides is entitled to a divorce." Section 132 provides that when "one year has expired after the entry of such interlocutory judgment, the court on motion of either party, or upon its own motion, may enter the final judgment granting the divorce, and such final judgment shall restore them to the *status* of single persons, and permit either to marry after the entry thereof; and such other and further relief as may be necessary to a complete disposition of the action. . . . The death of either party after the entry of the interlocutory judgment does not impair the power of the court to enter final judgment as hereinbefore provided; but such entry shall not validate any marriage contracted by either

party before the entry of such final judgment, nor constitute
any defense of any criminal prosecution made against either."
As these provisions were made after the other sections of the
code had been in force for many years, it was to be expected
that the new provisions would not in all respects be consistent
in language with other sections on the same subject. In sec-
tion 146 the code speaks of a disposition of the community
property "in case of the dissolution of the marriage." In
section 147 the code declares that "the court in rendering a
decree of divorce, must make such order for the disposition
of the community property and of the homestead as in this
chapter provided"; and in section 90 it declares that marriage
is dissolved only by the judgment of a court of competent
jurisdiction declaring a divorce. From these provisions it is
argued by the appellant that the court's power to make a
disposition of the property rights of the parties exists only
at the time when the divorce judgment becomes final and that
any act attempted to be accomplished before that, in the way
of a trial or interlocutory judgment declaring the property
rights or the rights to the custody of children, is *coram non
judice* and void.

We do not think that the code provision requires such a
narrow construction. When the history of legislation on the
subject and the conditions existing at the time of the adoption
of the amendment of 1903 are considered, the purpose, mean-
ing, and effect of that amendment are not difficult to discover.
While the law deems it necessary to provide that a divorce
may be granted when conditions are such as to make the mar-
riage relation intolerable, it is nevertheless true that the policy
of the law does not favor the dissolution of marriages. It
has been generally believed that many divorces were sought,
not in good faith, but because a roving fancy had found
another affinity more attractive, and that a dissolution was
often desired solely for the purpose of forming a new marital
connection. With the design of providing conditions under
which it would be understood that ardent passions of this char-
acter must perforce have time to cool before a new marriage
relation could be actually formed, the legislature, in 1897,
enacted a law in effect providing that no marriage should be
entered into by any divorced person, until at least one year
had elapsed after the decree of divorce was rendered. (Stats.

1897, p. 34.) It had become customary to avoid the provisions of this act by the expedient of going to an adjacent state for the purpose of entering into a new marital relation. This court was compelled to hold that marriages contracted in another state were valid in this state, although they were entered into within less than a year after a divorce had been granted in this state to one of the parties. (*Estate of Wood,* 137 Cal. 129, [69 Pac. 900].) The purpose of the amendment of 1903 was to carry into effect the object attempted to be attained by the statute of 1897. To do this the expedient was adopted of delaying the final judgment in divorce cases for the period of one year after it was judicially ascertained that a divorce should be granted. By thus making the right to a divorce ineffective for the period of one year, it became impossible for the parties to contract a valid new marriage anywhere until at least a year after the trial of the action of divorce had taken place. Except so far as was necessary to accomplish this object, it was not the intent of the statute to change in any respect the practice and procedure in actions for divorce. We do not doubt that the court has the same power now that it has always had to try and determine the issues between the parties in a divorce action with respect to property and custody of children, and that this may, and generally should, be done at the same time as the issues with respect to the cause for divorce are tried and determined. Unquestionably the court would have power under the present law, as it always has had the power under previous laws, to postpone the trial and decision of the property rights and custody of the children to any reasonable time after the rendition of the judgment of divorce, whether interlocutory or final. The amendment has not changed its power in this respect. It is proper in all actions for divorce to try the entire action at the same time as the issues respecting divorce are tried and to give an interlocutory judgment declaring the rights of the parties with respect to property and children.

We commend the action of the court below in this case in declaring, in its interlocutory decree concerning the property, that the rights therein specified should become final at the time the decree of divorce became final. We are not called upon here to determine whether the adjudication of property rights would or would not have been final at the

expiration of six months from the time of the entry of the interlocutory decree, if no appeal had been taken, and the parties had, before the expiration of one year and after the expiration of the six months, by mutual consent, procured an order from the court annulling the interlocutory decree of divorce; or whether such annullment would have had the effect of setting aside the decree relating to property rights and children. These questions are not involved in this case and it will be well to leave them for future disposition in some case where they are directly presented. In the present case the court determined all the issues in one trial and rendered an interlocutory judgment declaring the rights of the parties upon all the issues, and providing that the same should in all respects become final only at the time when the decree of divorce became final, in the mean time allowing temporary alimony. We see no objection to this practice and commend it as not only within the power of the court but as a proper method of the exercise of that power.

The judgment as to the amount and value of the community property and as to the disposition thereof between the parties is reversed and the cause is remanded for a new trial and judgment upon that issue alone. In all other particulars the judgment is affirmed.

Angellotti, J., Sloss, J., Henshaw, J., Lorigan, J., and Melvin, J., concurred.

On the thirtieth day of July, 1909, the court in Bank filed the following opinion and modification of the judgment:—

THE COURT.—Since the filing of the opinion in this case, the plaintiff has asked that, instead of remanding the case for a new trial of the issues as to the property, the judgment be modified in regard thereto, and has filed a written consent that the defendant be allowed, as part of his separate estate, out of the cash on hand, interest at the rate of seven per cent on the $15,500 found to be the capital invested in his business. This removes the objection to directing a modification of the judgment. The defendant introduced no evidence to show that the capital invested was entitled to a greater return than legal interest, and in the absence of such evidence, the burden

of proof being upon him, that would be the utmost he could claim. The wife would have been entitled to an opportunity to prove, if she could, that it earned a smaller proportion of the profits than legal interest, and, she being the respondent, it was for that reason considered necessary to order a new trial for that purpose. Her consent aforesaid avoids this necessity and leaves the case in such condition that a modification of the judgment will end the litigation with justice to both parties. (*Fox v. Hale & Norcross S. Mfg. Co.*, 122 Cal. 221, [54 Pac. 731].)

Interest at seven per cent on the $15,500 from April 19, 1900, the date of the marriage, to November 3, 1905, the time of the trial, amounts to $6012.70. Deducting this from $12,-139.03, found to be the cash on hand at the time of the trial, leaves $6126.33, as the part of the cash belonging to the community. The plaintiff's three fifths of this is $3675.86 and the defendant's two fifths is $2450.47.

It is ordered that the judgment be modified by changing the respective statements of the shares of each in the cash on hand therein, so that the part relating to the plaintiff's share shall read as follows:—

"2nd. The sum of three thousand six hundred and seventy-five and 86-100 dollars ($3675.86), in cash, being three fifths of the sum of $6126.33 in cash found by the supreme court to be community property of the plaintiff and defendant; and that no interest in defendant's separate property be awarded to plaintiff."

And so that the part relating to the defendant's share shall read as follows:—

"2nd. The sum of two thousand four hundred and fifty and 47-100 dollars ($2450.47), in cash, being two fifths of the sum found to be community property as aforesaid."

And that as so modified the judgment stand affirmed, the plaintiff to recover all costs.