[Civ. No. 7510. Third Dist. Jan. 4, 1949.]

J. L. TODD, Appellant, v. CHARLES J. McCOLGAN, as State Franchise Tax Commissioner, Respondent.

[Civ. No. 7511. Third Dist. Jan. 4, 1949.]

J. Z. TODD, Appellant, v. CHARLES J. McCOLGAN, as State Franchise Tax Commissioner, Respondent.

R. E. Brotherton and Aaron Turner for Appellants.

Fred N. Howser, Attorney General, James E. Sabine and Irving H. Perluss, Deputy Attorneys General, for Respondent.

PEEK, J.—This controversy arises out of additional personal income tax assessments levied by the defendant Franchise Tax Commissioner against each of the plaintiff taxpayers J. L. and J. Z. Todd. The additional taxes were paid under protest and separate claims for refund were filed by each of said taxpayers. After a hearing before the commissioner the claims were denied and separate actions for recovery of the taxes so paid were then filed in the Superior Court of Sacramento County, which actions were consolidated for hearing and decision in that court. Plaintiffs have now appealed from the judgment of the trial court, which in general followed and approved the computations and conclusions of the defendant.

Summarizing the evidence in the light most favorable to the judgment it appears that in 1914 plaintiffs formed a partnership for the conduct of the business of jobbers and wholesalers of doors, sash, glass and panels, under the name of Western Door & Sash Company, and ever since have continued in said business. At the inception of the partnership J. Z. Todd contributed the sum of $1,500 as the original capital investment of the partnership and no further contributions have been made thereto other than the undistributed partnership earnings, which were allowed to remain in the business. Prior to 1927, both plaintiffs were married and ever since have resided with their wives in Alameda county in this state. Since its founding each partner has owned an equal interest in the business and each has actively engaged in the management thereof. The services performed by J. Z. Todd have been those of buying and selling to mills and yards in the bay area, of looking after the credits, of arranging for the financing of the business and in general of performing the services of office executive for the partnership. The services performed by J. L. Todd who, in 1941 was 87 years

of age, have been those of selling to the mills and yards in outlying territories extending from Bakersfield to the Oregon line, of finding new outlets for the products handled by the partnership and of developing outlets already made. Several salesmen are employed by the partnership and are allotted certain territories, being paid a salary plus a commission of 5 per cent on all sales originating therein—some of these salesmen receiving a total compensation of approximately $7,800 for the year 1940 and $9,300 for the year 1941. Although the development of new outlets would first be made by the taxpayers the salesman would thereafter conduct the business within his territory and in some cases would also develop new business. In the year 1940 approximately 15 per cent and in the year 1941 approximately 60 per cent of the total sales were war contract sales. In some instances the partnership was a prime contractor but more frequently acted as a subcontractor. The business was mainly that of buying and selling, although the partnership did engage in some manufacturing in connection with its war contracts.

In 1927 the capital invested in the partnership was approximately $165,000 which, by subsequent withdrawals in excess of earnings, was reduced to the agreed sum of approximately $144,000 at the close of 1935. Thereafter the capital investment was increased from year to year by allowing a portion of the increasing partnership earnings to remain in the business. Thus in 1936 the sum of approximately $15,000 was added to the capital while in 1941 more than $69,000 was added thereto. The investment in inventory which showed a balance at the close of 1936 of approximately $66,500 had at the close of 1941 increased to more than $135,000. During the same period accounts receivable increased from more than $83,000 to slightly more than $144,000. Accounts payable, however, decreased from $47,100 at the close of 1936 to approximately $15,700 at the close of 1941. Sales also increased from nearly $360,000 in 1935 to more than $950,000 in 1941. The net distributive income for the partnership increased from approximately $11,000 in 1935 to $92,409.91 and $110,729.60, respectively for 1940 and 1941, the years in question, with each taxpayer's distributive share being $46,204.96 and $55,363.80. Neither of the plaintiffs has ever received a salary or other fixed compensation for his services, but from time to time would withdraw varying amounts as needed for living expenses, the balance of undistributed income being added to capital.

There is testimony that although the same volume of business could have been handled by the partnership with smaller inventories during 1940 and 1941 substantial inventories were carried during these years because the taxpayers considered it a good investment particularly by reason of the rising prices. The business appears to be highly competitive and one subject to fluctuation, that is, during good years the partnership enjoyed high returns but were reduced to comparative low returns during poor years.

In computing the taxes due, the defendant commissioner employed a formula which apparently had been used previously by the Commissioner of Internal Revenue for federal taxation purposes to ascertain the community and separate property portions of plaintiffs' incomes for the taxable years in question. (See *Todd* v. *Commissioner of Int. Rev.*, 153 F.2d 553.) First the defendant commissioner estimated what would constitute a fair rate of return upon the separate capital investment under the particular circumstances of this case and next estimated what would be a fair salary for the taxpayers for each of the years in question. These figures so obtained were totalled and the percentage of each to the total constituted the proportion of the distributable income attributable to capital and to services. The defendant commissioner did not apply the formula to any of the years prior to 1936 since the parties agreed that the separate capital investment as of January 1, 1936, was approximately $144,000.

The trial court found in accordance with the determination of the defendant commissioner, that the separate capital investment of the plaintiffs as of January 1, 1940, was $224,-548.46 but found that the separate capital investment as of January 1, 1941, was $242,512.34, being a sum less than the amount found by the defendant commissioner. The trial court further found that an 8 per cent return on the separate capital investment was reasonable under the facts and circumstances, and allocated the net distributable income between separate income and community income accordingly.

Plaintiffs' appeal attacks both the determination of the trial court that an 8 per cent return on capital was reasonable for the years 1940 and 1941 and the determination and approval of the computation by the defendant commissioner that the amount of the separate capital investment as of January 1, 1940, was $224,548.46.

While plaintiffs do not argue that the result reached by the trial court is not warranted by the facts and circumstances

disclosed by the record herein it is their contention first that where the separate capital of a husband is invested in a business conducted by the husband during the continuance of the marital relationship, the portion of the income derived therefrom attributable to the separate capital cannot exceed a 7 per cent rate of return on the separate capital investment and second, that any increase in the separate capital investment must be calculated upon the original investment at 7 per cent simple interest, which method they argue is a rule of property law in this state, citing *Pereira* v. *Pereira,* 156 Cal. 1 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A. N.S. 880]. In other words, the second phase of appellants' contention does not appear to be that the formula used by the defendant commissioner was improper under the record before this court but that any computation other than by the imposition of simple interest not to exceed the rate of 7 per cent is improper.

From an examination of the cases it is apparent that the courts of this state have enunciated no hard and fast rule uniformly applicable to the type of case presented herein. (See *Pereira* v. *Pereira, supra; Heck* v. *Heck,* 63 Cal.App.2d 470 [147 P.2d 110]; *Van Camp* v. *Van Camp,* 53 Cal.App. 17 [199 P. 885], and *Huber* v. *Huber,* 27 Cal.2d 784 [167 P.2d 708].) The statute law of this state provides merely that the respective interests of a husband and wife in community property during the continuance of the marital relation are present, existing, and equal, that all property owned by the spouses before marriage, together with the rents, issues and profits thereof is separate property, and that all other property acquired after marriage by either spouse which would not have been the separate property of either, is community property. (Civ. Code, §§ 161a, 163.) It is apparent that by such provisions no limitation is made either upon the amount of or the increment attributable to separate property, hence the determination thereof, at least for tax purposes, becomes a question of fact for the defendant commissioner in the first instance, subject to court review. This is recognized in the main case relied upon by appellants, *Pereira* v. *Pereira, supra,* the court therein stating:

"The probable contribution of the capital to the income should have been determined from all of the circumstances of the case, and as the business was profitable it would amount at least to the usual interest on a long investment well secured."

It follows that neither the commissioner nor the trial court herein was limited, as plaintiffs contend, to the agreed amount of separate capital investment as of 1936 plus simple interest at 7 per cent in computing the separate capital investment of the plaintiff taxpayers. Nor was the trial court limited to a 7 per cent rate of return thereon in apportioning the distributable income since it is not denied that the capital of the business was constantly .increasing and showed substantial increases in inventory and accounts receivable, and therefore under the circumstances the method of allocation adopted by the trial court was reasonable. ▉ Flexibility, as this case well illustrates, is not only' a desirable but an essential element of any workable system for allocation of income. (*Pacific Fruit Express Co.* v. *McColgan,* 67 Cal.App.2d 93, 99 [153 P.2d 607].

▉ The taxpayer cannot merely assert the incorrectness of a determination of a tax or the method used and thereby shift the burden to the commissioner to justify the tax and the correctness thereof. It is the well-established rule that when the plan of allocation is found to be reasonable and rational the burden of showing error in defendant's computation or application is upon the taxpayer.

▉ Lastly it may be said that where as here the findings of a trial court that property is either community or separate are supported by substantial evidence, whether contradicted or uncontradicted or if predicated upon evidence from which reasonable and divergent inferences may be drawn, such findings are binding upon a reviewing court and will not be disturbed on appeal. (*Estate of Trelut,* 26 Cal.App.2d 717 [80 P.2d 147].)

The judgment is affirmed.

Adams, P. J., and Thompson, J., concurred.