[Civ. No. 19050. Second Dist., Div. Two. Dec. 29, 1952.]

PAUL MARGOLIS, Respondent, v. NELLIE B. MAR-
GOLIS, Appellant.

NELLIE B. MARGOLIS, Appellant, v. PAUL MARGOLIS
et al., Respondents.

William B. Beirne and Newby, Holder & Newby and Dee Holder for Appellant.

Vaughan, Brandlin & Wehrle, J. J. Brandlin and Pat B. Trapp for Respondents.

MOORE, P. J.—From an interlocutory decree of divorce and an award to respondent husband of $328\!\!\!/440$ of the total properties of the twain accumulated since marriage, the wife appeals.

Mr. and Mrs. Margolis were married in 1902. At that time respondent was engaged in the jewelry business in Kansas City. Early in 1920 he was adjudicated a bankrupt and the couple moved to Albuquerque, New Mexico. Respondent there purchased a home which the family occupied until De-

cember, when at the wife's instance the parties separated. Her attorney, Judge John Simms, represented her in the negotiations and in preparing a property settlement and separation agreement. This agreement consisted of two documents: the "separation agreement," and the "memorandum of agreement." Both were executed on the same date. Pursuant to those writings respondent received $6,000, an automobile and certain insignificant items of personalty. After such matters had been disposed of, Mr. Margolis transferred his domicile to Los Angeles.

In June, 1921, Vivian, daughter of the parties, joined Mr. Margolis in his Los Angeles home on St. Andrews Place. In August appellant paid them a visit and remained a few weeks. She then returned to Albuquerque where she sold the home and also an apartment building she had purchased after the separation. Returning to the St. Andrews residence, she resided for six months, but no reconciliation occurred. The couple occupied separate apartments. Mrs. Margolis and Vivian departed, made a home in Los Angeles, then South Pasadena, later in a Burbank dwelling Mrs. Margolis had constructed. However, in 1924, pursuant to the entreaties of the daughter, the couple resumed their conjugal relationship and family life until the final separation in 1950. In July of that year, Mr. Margolis established his residence in an apartment house where he remained until he went to live in the home of Vivian and her husband.

After respondent had instituted the instant litigation by filing a complaint to have his rights determined under the writings executed by the parties after their separation in 1920, the action ultimately went to trial on appellant's complaint for divorce and respondent's cross-complaint. Vivian Fern was by appellant made a defendant with the allegation that she had received gifts of community property from her father. The judgment determined that of the combined assets of the parties valued at $440,000, the community estate owns $^{112}/_{440}$, respondent the balance. On this appeal, Mrs. Margolis attacks the findings that she treated her husband with extreme cruelty and that the greater portion of the total estate is respondent's separate property.

## DIVORCE

In support of the determination that respondent was entitled to a divorce on the ground of extreme cruelty, the court found that during the entire period of the marriage,

134

appellant had "used insulting, abusive, derogatory and profane language and expressions" toward Mr. Margolis; that she had repeatedly humiliated him in the presence of friends and relatives; that during recent years while respondent was in ill health she continually upset him and hindered his recovery; that she went so far as to threaten his life. Such findings, based upon substantial evidence, support the court's conclusion that respondent is entitled to a divorce on the ground of extreme cruelty.

The testimony of Mr. Margolis, of Vivian Fern, and of former and present employees of the family was to the effect that for over 30 years, Mrs. Margolis treated her husband with a total lack of conjugal kindness, bordering on contempt and hatred. She continually berated him; applied vile epithets and opprobrious terms of hatred and contempt for his maternal ancestry. Mr. Phelps, a male nurse who attended respondent in recent years, testified that on one occasion Mr. Margolis fell while attempting to get out of a chair; that when he arrived to give aid he found Mrs. Margolis standing over the old gentleman addressing him in language seasoned with abhorrence and disgust while his patient was too weak to stand by his own effort; that appellant objected to Mr. Margolis' visiting his Jewish relatives, and to the visits of Vivian to see her father. He testified that on one occasion appellant "disowned the daughter in his presence and said she was no daughter of hers since she was married to a little fat pig, referring to Mr. Fern." There was ample proof that appellant's behavior caused Mr. Margolis much suffering and upset him greatly, that he was rendered extremely nervous, lost his appetite; that many times after Mrs. Margolis' tirades he "would go off and cry."

In view of such evidence, this court is powerless to interfere with the findings and judgment. It is not the function of an appellate court to weigh the evidence anew. The issue of cruelty and its effect on the aggrieved spouse are questions of fact for the trial court and its determinations are conclusive when, as here, substantial evidentiary support therefor is revealed by the record. (LeFiell v. LeFiell, 108 Cal.App.2d 321, 323 [239 P.2d 61].) There was no error in the court's overruling appellant's objection to the introduction of evidence of her alleged acts of cruelty that occurred 30 years before. The period of time during which the acts of cruelty continued had a distinct bearing on the court's ultimate disposition of the community

property. (*Arnold* v. *Arnold,* 76 Cal.App.2d 877, 881 [174 P.2d 674].)

## DIVISION OF PROPERTY

After finding that the total value of the property in dispute was $440,000 and that the value of the community interest therein was $112,000, the court determined that the balance comprised the husband's separate property. Mrs. Margolis was awarded two pieces of income property and cash totaling $40,500 and in addition, the right to reside in the family home for the remainder of her life. In order to subvert such determination, appellant now presents numerous arguments in support of her contention that the court erred in its findings. She contends that the only proper ultimate fact to be derived from the evidence is that the totality of the property is community in character. She insists that respondent's proof fails to overcome the familiar statutory presumption that property acquired during marriage, though standing in the husband's name alone, is a community asset. (Civ. Code, § 164.)

In order to ascertain the rights of the spouses in the property in dispute a consideration of the writings made in 1920 was essential. The court found that the agreements executed in Albuquerque constituted a property settlement agreement pursuant to which Mr. Margolis received $6,000. Such sum was by him during the period of the separation invested wisely. By 1924 it had increased to $126,000. That was the year in which the reconciliation was effected. The court also found "that the said property settlement agreement has never been rescinded by the parties as to the provisions executed at or prior to the time the parties resumed living together in the year 1924." ▮ Accordingly, in allocating the $440,000 to the respective interests of separate estate and community property, the court allowed Mr. Margolis a 6 per cent return on his separate property right of $126,000 and concluded that the balance was the fruit of his managerial wisdom. Thus, the court properly derived the portion belonging to the community. Such computations were proper and represent a fair and equitable allocation of the income. (*Todd* v. *McColgan,* 89 Cal.App.2d 509, 513-514 [201 P.2d 414]; *Pereira* v. *Pereira,* 156 Cal. 1, 7 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A. N.S. 880].) Moreover, the court might with judicial grace and abundant authority (Civ. Code, § 146) have awarded respondent the entirety thereof on the finding that appellant was guilty of extreme cruelty. In view of the proof

of appellant's acts adopted by the court, it was for the "keeper of the king's conscience" to determine whether any portion of the community estate should go to appellant. ■ When under such evidence of extreme cruelties the trial court awards more than one half the community property to one spouse, the reviewing tribunal is without jurisdiction to do more than determine whether the court below abused its discretion. Clearly, there was no such abuse here. The findings of extreme cruelty, abundantly justified by the evidence, warrant the award. According to the computations made by charging the living expenses to the community and allowing respondent 6 per cent per annum on his capital of $126,000 for 26 years, the community estate could not have greatly exceeded the sum derived by the trial court as of 1950. (*Hill* v. *Hill,* 82 Cal. App.2d 682, 696 [187 P.2d 28].)

■ There is no support for the contention that the court erred in concluding that the 1920 agreements constituted a property settlement and were so intended by the parties. The two writings were prepared by Mrs. Margolis' attorney, executed on the same date and the body of the "memorandum of agreement" referred to the "separation agreement." The latter provided for the custody and support of the daughter, that certain Albuquerque real property was the separate estate of the wife, and contained mutual covenants whereby each relinquished all claims to any property then owned or thereafter acquired by either of them. The other document acknowledged receipt of $6,000 by the husband and recited that Mrs. Margolis had certain "mortgages, diamonds and assets" which were her separate property and to which the husband "undertakes that he will not, in the future, make claim or demand." Thus since the documents related to the same matter and were executed together, obviously as one transaction, they were properly read together as one agreement. (Civ. Code, § 1642; *McNeill* v. *Pappas,* 74 Cal.App. 591, 596 [241 P. 897].) Appellant's contention is that they were unlike and had nothing in common, and that because respondent did not plead their kinship the court was without power to determine that they constituted one agreement. The chancellor is not so circumscribed. The parties, their controversy and their evidence were all before the court whose duty it was to settle all differences and terminate their mutual unpleasantness.

■ Under attack also is the finding that the executed provisions of the agreement with respect to division of property were not abrogated by the reconciliation. The record

reveals that after the parties entered into the agreement each transacted business in his own name and separately managed and dealt with the property received under that agreement. Mrs. Margolis remained in New Mexico, retained the dwelling and furniture and acquired an apartment house as her separate property. Later, after coming to California, she purchased a lot here and constructed a home, and bought an apartment building. She eventually sold these properties, invested the proceeds in a business which became bankrupt and ultimately lost practically all. She testified that Mr. Margolis handled the sales of her properties and collected the proceeds. However, his denial adopted by the court raised a conflict on this point. He could not remember receiving such sums. Moreover, such sales were made while the parties were residing in separate homes about six months prior to reconciliation.

At all times after the 1920 separation Mr. Margolis' business transactions were consummated in his own name. After the parties came together again in 1924 his manner of operating was continued. He never consulted his wife or discussed with her his numerous real estate deals. After 1924 respondent's sole income was from his realty investments owned at that time. He was never employed by anyone, and had no occupation other than making investments and managing his properties. Accordingly, the court's finding is supported by the evidence. ▉ Whether the parties intended to terminate or abrogate entirely their prior agreement was a question of fact. The resumption of marital relations is of course of material weight in arriving at such intent, but it is not of itself conclusive. (*DeVault* v. *DeVault,* 90 Cal.App.2d 15, 16 [202 P.2d 375].) ▉ Since upon the evidence introduced the court concluded that respondent was possessed of some $126,000 in separate property at the time of reconciliation, and since he was never gainfully employed and had no income other than the rents, issues and profits resulting from such property, the court did not arbitrarily or unfairly determine that his assets held in 1950, less that part attributable to his managerial skills, were then his separate estate. (*Huber* v. *Huber,* 27 Cal.2d 784, 791-792 [167 P.2d 708].)

It is to be observed that in the main appellant's attack on the judgment consists of argument that the findings lack evidentiary support and she relies upon numerous inconsistencies and ambiguities in the testimony of Mr. Margolis. It is true that such testimony leaves much to be desired from the stand-

point of clarity and precision. However, the trial court kept in view the fact that the witness was 81 years of age and had been in ill health for several years. His testimony demonstrates that he had difficulty in comprehending and answering the questions propounded to him. Nevertheless, such testimony amply supports respondent's position and is not, as labeled by appellant, so ''confusing or contradictory'' as to be disregarded by this court.

Judgment affirmed.

McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 26, 1953.