[No. D012292. Fourth Dist., Div. One. Aug. 3, 1993.]

In re the Marriage of DAVID and BARBARA DEKKER.
DAVID DEKKER, Respondent, v.
BARBARA DEKKER, Appellant.

846

**COUNSEL**

Barbara Dekker, in pro. per., Gray, Cary, Ames & Frye, Marcelle E. Mihaila, Kenneth S. Klein, Shea & Ashworth, Ashworth, Larson & Blanchet, Frances L. Harrison, Kathryn F. Ashworth, Sullivan, Hill, Lewin & Markham and Paul E. McLeans for Appellant.

Richard J. Annis and Bruce Beals for Respondent.

**OPINION**

**NARES, J.**—In a dissolution, husband (David) claimed community interest in a corporation formed during the marriage, Gas Turbine Services Corporation (GTS), whose stock had been issued to wife (Barbara). In bifurcated proceedings the court found: (1) Barbara was the title holder to the GTS stock;[1] (2) judicial estoppel did not bar David from asserting community interest in GTS; (3) the increased value of GTS was due to David's effort, expertise and contacts; (4) under the doctrine of equitable apportionment and *Pereira* v. *Pereira* (1909) 156 Cal. 1 [103 P. 488], Barbara's separate

---

[1] David appealed from the judgment finding Barbara the titleholder of the GTS stock. Barbara cross-appealed from the finding that judicial estoppel did not bar David's community property claim. Barbara also appealed certain interim orders.

We dismissed David's appeal upon the parties' stipulation. We presume Barbara has abandoned her interim appeals.

property investment in GTS was due a 10 percent annual return, and the balance of GTS profits was community property.

Barbara appeals, asserting (1) error in finding that judicial estoppel did not bar David's claim; and (2) error in applying the doctrine of equitable apportionment. We conclude substantial evidence supports the court's findings. Accordingly, we affirm.

### FACTS AND PROCEDURE

Barbara and David lived together from December 1981.[2] David worked in the aerospace field. Barbara was unemployed, but she had some $75,000 in separate property.[3] Barbara and David were married August 29, 1982.

David lost his San Diego job in September 1982. He commuted to a new job in Dallas, Texas for several months before quitting to join his experience with Barbara's capital, and go into business with Barbara.

In March 1983, they retained corporate counsel (Dwyer) who formed GTS, naming Barbara and David as the original incorporators. Until their separation, Barbara and David were the only members of the GTS board. David was named president of GTS and agent for service of process. Barbara helped with typing, scheduling and bookkeeping.

The GTS stock was issued solely in Barbara's name. According to David, Barbara wanted the stock in her name "[t]o protect the assets of the company from [his ex-wife]." Attorney Dwyer told both Barbara and David that the stock could later be transferred into both their names. Dwyer testified at his deposition that Barbara and David referred to GTS as "our corporation" and said "we're going to build it together." The GTS accountant asked the parties why the stock was solely in Barbara's name. The accountant was told that Barbara and David were having "trouble" with David's former wife.

Barbara initially capitalized GTS with $1,000 from her separate property. In addition, she loaned GTS nearly $50,000 for start-up costs. In 1985 David received some $20,000 in settlement of a lawsuit. He loaned these funds to

---

[2] Barbara's statement of facts was limited to those supporting her contentions on appeal. Barbara thus violated the California Rules of Court, rule 13, which provides in pertinent part that an appellant's opening brief "shall contain a statement of the case, setting forth concisely, *but as fully as necessary for a proper consideration of the case . . .* a summary of the material facts." (Italics added.)

[3] Both David and Barbara were divorcees. David had no separate property because, according to Barbara, it "was being taken away from him by [his ex-wife]."

GTS to cover payroll. Barbara and David's loans were accounted for separately.[4] GTS repaid Barbara, but David testified his loans were never repaid.

GTS obtained further commercial loans to purchase equipment and machinery and to provide working capital. The loans were personally guaranteed by Barbara and David.[5]

David's ex-wife discovered GTS in October 1983, and filed a motion to increase her spousal support. In opposition to the motion, David filed a declaration in propria persona denying (under penalty of perjury) any ownership interest in GTS. This motion forms the basis for Barbara's contention that David should be judicially estopped from claiming community interest in GTS. At trial there was extensive testimony regarding Barbara's involvement in the preparation of David's declaration.[6]

GTS became quite profitable. After six years of marriage David filed for dissolution, claiming GTS as a community asset. Barbara called a meeting of GTS's board of directors, and fired David. The court placed GTS in receivership. At the request of the receiver, David was reinstated as chief executive,[7] and Barbara was enjoined from entry upon GTS premises.

In the first trial Barbara argued (1) GTS was her separate property, as its stock was issued in her name alone; and (2) David should be judicially estopped from claiming any interest in GTS. The commissioner found, under Evidence Code section 662,[8] Barbara was the sole owner of the stock. The commissioner also ruled David's community property claim was not barred by judicial estoppel due to the coordinated "interactions of the parties as it pertains to the prior disso[lution] case."

---

[4]Barbara and David regularly drew GTS funds for personal living expenses. The GTS accountant testified "we treated disbursements to either of them as if it was to the same party."

[5]As a loan condition, Barbara and David's combined salary was capped at $60,000 per year.

[6]It is undisputed that when David defeated his ex-wife's motion, GTS had no net income. Indeed, at that time GTS had lost $26,170. At that same time GTS records showed a loan balance to Barbara of $36,618 and cash on hand of $539. David did state, however, that GTS "would have potential."

[7]Barbara testified at trial that David could be easily replaced "[b]ecause he is not necessary to the running of the business."

[8]Evidence Code section 662 provides: "The owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof."

Section 662 is a codified common law title presumption, whose application under these facts is curious. Since Barbara acquired the stock during marriage while domiciled in California, it seems the court erred by not applying the rebuttable presumption of community property. (Civ. Code, § 5110.) That presumption can be rebutted by tracing the funds used to acquire the property (stock) to a separate source. The issue, however, is not before us on this appeal. (See fn. 1, *ante*.)

In the second trial Barbara argued (1) judicial estoppel should bar David's claim, notwithstanding her pending appeal of the first judgment;[9] (2) the doctrine of equitable apportionment should not be applied, because David had increased the value of her separate property (GTS), not his;[10] and (3) David had been adequately compensated for his services, and thus apportionment was not required.

Following a lengthy trial, the judge rejected Barbara's arguments and applied the apportionment formula of *Pereira v. Pereira, supra,* 156 Cal. 1. Based on expert testimony, the court valued GTS at $927,000. The court apportioned Barbara's original $1,000 plus a 10 percent annual return, totaling $1,934, to her separate property. The balance of $925,066 was apportioned to community property. The court also made specific findings that David had been paid market value for his services, and that David was the reason for the great success of GTS. Barbara appealed from the second judgment, raising identical contentions.

## DISCUSSION

Barbara argues this is not an apportionment case, and she asserts the question whether to apply equitable apportionment is one of law which should be reviewed de novo. Barbara cites no valid authority for this proposition.[11]

Appellate review of a trial court's finding that a particular item is separate or community property is limited to a determination of whether any substantial evidence supports the finding. (*Marriage of Ananeh-Firempong* (1990) 219 Cal.App.3d 272, 279 [268 Cal.Rptr. 83]; *McLellan v. McLellan* (1972) 23 Cal.App.3d 343, 356 [100 Cal.Rptr. 258].) We apply the substantial evidence test to the judicial estoppel issue and to the issue whether equitable apportionment should be applied to this case. We apply the abuse of discretion test to the court's application of *Pereira.* (*Beam v. Bank of America* (1971) 6 Cal.3d 12, 18 [98 Cal.Rptr. 137, 490 P.2d 257].)

## I. JUDICIAL ESTOPPEL

Barbara argued, because of David's declaration in opposition to his ex-wife's motion for increased spousal support, that he should be judicially

---

[9] See footnote 1, *ante.*

[10] In her supplemental brief to the trial court, Barbara argued that if any apportionment formula is to be applied, the court should apply *Van Camp v. Van Camp* (1921) 53 Cal.App. 17 [199 P. 885].

[11] Her single authority, *Hurtado v. Statewide Home Loan Co.* (1985) 167 Cal.App.3d 1019 [213 Cal.Rptr. 712], was overruled on this very point by the California Supreme Court. (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479, fn. 4 [243 Cal.Rptr. 902, 749 P.2d 339].)

estopped from claiming an interest in GTS. Judicial estoppel is an equitable doctrine aimed at preventing fraud on the courts. It is applied to keep litigants from playing "fast and loose with the court." (*Schulze* v. *Schulze* (1953) 121 Cal.App.2d 75, 83 [262 P.2d 646].)

David testified before the commissioner that Barbara drafted the declaration and presented it for his signature. At her deposition, Barbara denied any involvement in preparing the declaration. However, at trial, David produced a handwritten declaration prepared by Barbara. She then admitted to assisting David with his declaration and taking an active role in defeating his ex-wife's motion.

The commissioner found "judicial estoppel clearly does not apply in this particular case" because of the "interactions of the parties" in opposition to the spousal support motion filed by David's ex-wife.

A trial court's determination on the issue of estoppel is a factual finding which will be upheld if supported by substantial evidence. (*County of Sonoma* v. *Rex* (1991) 231 Cal.App.3d 1289, 1296 [282 Cal.Rptr. 796].)

The purpose of judicial estoppel is to prevent injury to an *innocent* litigant. Barbara admits in her brief, that she "did help draft the earlier declaration." We conclude the commissioner's finding is supported by substantial evidence.

## II. EQUITABLE APPORTIONMENT

■ Barbara contends that since the community had received market value compensation for David's services to GTS, the trial court should not have reached the issue of apportionment. Barbara's assertion begs the question of what triggers a court's application of the doctrine of equitable apportionment.

We begin by noting that in California, property acquired prior to marriage is separate, while property acquired during the marriage is presumed community property. (Civ. Code, §§ 5107, 5108, 5110.) Income from separate property is separate, the intrinsic increase of separate property is separate, but the fruits of the community's expenditures of time, talent, and labor are community property. (Civ. Code, §§ 5107, 5108; Perkins, *Appreciation of the Separately Owned, Closely Held Business* (1987) 14 Comm.Prop.J. 62, 64.)

■ Indeed, the basic concept of community property is that marriage is a partnership where spouses devote their particular talents, energies, and

resources to their common good. (Knutson, *California Community Property Laws: A Plea for Legislative Study and Reform*) (1966) 39 So.Cal.L.Rev. 240.) Acquisitions and gains which are directly or indirectly attributable to community expenditures of labor and resources are shared equally by the community. (*Ibid.*)

Where community efforts increase the value of a separate property business, it becomes necessary to quantify the contributions of the separate capital and community effort to the increase. (Perkins, *Appreciation of the Separately Owned, Closely Held Business, supra*, 14 Comm.Prop.J. at p. 64.) It is well settled in California that income produced by an asset takes on the character of the asset from which it flows. Thus, rents, issues and profits are community property if derived from community assets, and separate property if derived from separate assets. (Civ. Code, §§ 5107, 5108; *Hicks* v. *Hicks* (1962) 211 Cal.App.2d 144, 152-153 [27 Cal.Rptr. 307], citing *Estate of Cudworth* (1901) 133 Cal. 462, 468 [65 P. 1041].)

In *Pereira* v. *Pereira, supra*, 156 Cal. at page 7, the California Supreme Court first announced the rule that where a husband owns a separate property business and devotes his efforts to the enterprise, there must be an apportionment of the profits. (See also *Beam* v. *Bank of America, supra*, 6 Cal.3d at p. 17; *Estate of Neilson* (1962) 57 Cal.2d 733, 740 [22 Cal.Rptr. 1, 371 P.2d 745]; *Gilmore* v. *Gilmore* (1955) 45 Cal.2d 142, 149 [287 P.2d 769]; *Harrold* v. *Harrold* (1954) 43 Cal.2d 77, 80 [271 P.2d 489]; *Huber* v. *Huber* (1946) 27 Cal.2d 784, 792 [167 P.2d 708].)

Viewing the language cited in *Pereira* in light of California's partnership model of marriage, the necessity of apportionment arises when, during marriage, more than minimal community effort is devoted to a separate property business.[12] (See *Weinberg* v. *Weinberg* (1967) 67 Cal.2d 557 [63 Cal.Rptr. 13, 432 P.2d 709] [community entitled to share of profits even where owning spouse devotes "minimal" effort]; *Kenney* v. *Kenney* (1954) 128 Cal.App.2d 128 [274 P.2d 951] [community entitled to share of profits for "comparatively insignificant" services].)

The community is entitled to the increase in profits attributable to community endeavor. (*Beam* v. *Bank of America, supra*, 6 Cal.3d at p. 17; *Pereira* v. *Pereira, supra*, 156 Cal. at p. 7.) Accordingly, courts must apportion profits derived from community effort to the community, and

---

[12]An apportionment of profits may also be required when a spouse invests separate funds in real estate or securities. (*Estate of Neilson, supra*, 57 Cal.2d at p. 740; *Margolis* v. *Margolis* (1952) 115 Cal.App.2d 131, 135 [251 P.2d 396]; *Witaschek* v. *Witaschek* (1942) 56 Cal.App.2d 277, 280-281 [132 P.2d 600].)

profits derived from separate capital are apportioned to separate property.[13] (*Beam* v *Bank of America, supra,* 6 Cal.3d at p. 18; *Estate of Neilson, supra,* 57 Cal.2d at p. 740; *Pereira* v. *Pereira, supra,* 156 Cal. at p. 7.)

■ Barbara's point, that the community received market value compensation, does not affect our inquiry. Whether or not the community received salary, a court must determine to what extent the increased value of the separate property business is attributable to community effort. (See *Weinberg* v. *Weinberg, supra,* 67 Cal.2d at p. 565.)

Barbara further argues that equitable apportionment does not apply here because David was increasing the value of her property, not his. This misreads *Pereira* and its progeny.

A fair reading of *Pereira* supports the view that where more than minimal community effort combines with a separate capital investment to increase the value of the separate investment, the court must determine the amount of the increase attributable to the capital, and the amount attributable to community effort. (*Pereira* v. *Pereira, supra,* 156 Cal. at p. 7.)

Here, GTS was started during the marriage. Barbara was issued all GTS stock, valued at $1,000. The commissioner found the stock was Barbara's separate property. She and David were the only officers of the corporation. David devoted 100 percent of his effort to building GTS and was primarily responsible for its success. We hold that the trial court's application of equitable apportionment to the increased value of the GTS stock is supported by substantial evidence.

### III. PEREIRA

Once the court is satisfied that it should apportion business profits, the question arises which method to apply. ■ California courts have developed two alternative approaches to allocating business profits.[14] The *Pereira* approach is to allocate a fair return to the separate property investment and allocate the balance of the increased value to community property as arising

[13]Barbara contends that when a spouse devotes efforts to improving separate property, the spouse can choose to take an inadequate salary, leaving community property earnings in the separate property business. Barbara reasons the only purpose of *Pereira* is to reimburse the community in such situation. Like the trial court, we reject this novel view of equitable apportionment.

[14]These formulas, however, are not exclusively applied. Indeed, another apportionment approach, known as the tax, or *Todd,* formula was used in federal cases (See *Todd* v. *Commissioner of Internal Revenue* (9th Cir. 1945) 153 F.2d 553), and adopted by one California court. (*Todd* v. *McColgan* (1949) 89 Cal.App.2d 509 [201 P.2d 414]; and see Saul, *Apportionment of Income From A Spouse's Separately Owned Property* (1978) 51 Cal.L.Rev.

from community efforts. (*Beam* v. *Bank of America, supra,* 6 Cal.3d at p. 18; *Estate of Neilson, supra,* 57 Cal.2d at p. 740; *Pereira* v. *Pereira, supra,* 156 Cal. at p. 7.) The *Van Camp* approach is to determine the reasonable value of the community's services, allocate that amount to community property and the balance to separate property.[15] (*Beam* v. *Bank of America, supra,* 6 Cal.3d at p. 18; *Tassi* v. *Tassi* (1958) 160 Cal.App.2d 680, 690 [325 P.2d 872]; *Van Camp* v. *Van Camp, supra,* 53 Cal.App. at pp. 27-28.)

*Beam* observed that courts have not developed a precise standard in choosing between *Pereira* or *Van Camp,* but have endeavored to adopt that formula which is most appropriate and equitable under the circumstances. (*Beam* v. *Bank of America, supra,* 6 Cal.3d at p. 18.) The court is not bound to adopt a predetermined percentage as a fair return on separate business capital, nor need it limit the community interest to a salary as reward for a spouse's efforts, but may select whichever formula will effect substantial justice between the parties. (*Ibid.*)

*Pereira* is typically applied where business profits are principally attributed to efforts of the community. (See, e.g., *Estate of Neilson, supra,* 57 Cal.2d at p. 740; *Pereira* v. *Pereira, supra,* 156 Cal. at p. 7.) Conversely, *Van Camp* is applied where community effort is more than minimally involved in a separate business, yet the business profits accrued are attributed to the character of the separate asset. (See e.g., *Tassi* v. *Tassi, supra,* 160 Cal.App.2d at p. 690; *Logan* v. *Forster* (1952) 114 Cal.App.2d 587, 601 [250 P.2d 730]; *Van Camp* v. *Van Camp, supra,* 53 Cal.App. at pp. 27-28.) The court has discretion to choose whichever formula will effect substantial justice.

■   Here, Barbara argues the community has been compensated for its efforts. She relies on the trial court's finding that the community received

147, 184-187; Bodenheimer, *The Community Without Community Property* (1972) 8 Cal.West.L.Rev. 381, 412-413.)

[15]We note California's method of apportioning business profits is unique among community property jurisdictions. In Texas, Idaho, Louisiana, and those countries following the original Spanish/Mexican concepts of community property, rents, issues and profits from separate property are *community property.* (*Arnold* v. *Leonard* (1925) 114 Tex. 535 [273 S.W. 799]; Bodenheimer, *The Community Without Community Property, supra,* 8 Cal.West.L.Rev. at pp. 384-385.) Arizona and Nevada do not apportion business profits between separate and community property. Rather, they attribute business profits, wholly, to either separate or community property, depending on whether the profits derive principally from separate capital or community effort. (*Lawson* v. *Ridgeway* (1951) 72 Ariz. 253 [233 P.2d 459, 29 A.L.R.2d 518; *Lake* v. *Lake* (1884) 18 Nev. 402 [7 P. 744].) Washington would apportion where profit from capital or efforts can be segregated. But where segregation is problematic, profits are wholly attributed to their dominant source. (*Salisbury* v. *Meeker* (1929) 152 Wash. 146 [277 P. 376].)

Thus, were a *Pereira* situation to arise in Arizona, Nevada or Washington, contrary to California, the separate investment would *not* be accorded a reasonable return.

fair market compensation, and would end apportionment there. However, she ignores the trial court's dispositive finding that David was primarily responsible for the increased value of GTS.

To elaborate on the *Pereira* apportionment formula, the court's focus is on the increased value of the business. Here, the trial court found the GTS stock, initially valued at $1,000, was issued in Barbara's name. The court then determined the value of the stock at the time of trial was $927,000. Under *Pereira*, the totality of the stock's (and, therefore, the business's) increase in value (here $926,000) is attributed to either the separate capital investment or to the efforts of the community. (See, e.g., *Estate of Neilson*, *supra*, 57 Cal.2d at p. 740; *Pereira* v. *Pereira, supra*, 156 Cal. at p. 7; *In re Marriage of Denney* (1981) 115 Cal.App.3d 543, 549 [171 Cal.Rptr. 440].) That part of the increase derived from the capital is apportioned to separate property. That part which derives from the community effort is apportioned to the community. (*Ibid.*)

As noted, the *Pereira* formula attributes to separate property the amount invested plus a fair return. The balance is attributed to the community. (See e.g., *Estate of Neilson, supra*, 57 Cal.2d at p. 740; *Pereira* v. *Pereira, supra*, 156 Cal. at p. 7; *In re Marriage of Denney, supra*, 115 Cal.App.3d at p. 549.) Here, the trial court accorded Barbara her original $1,000, plus a 10 percent annual return, for a total of $1,934 in separate property. That figure was then subtracted from the increased value of GTS ($927,000), leaving a balance of $925,066 which was apportioned to the community.

To limit the community to compensation received by way of salary during the marriage would ignore California's egalitarian marriage model and the apportionment formula of *Pereira*, and thereby leave over $925,000 unattributed. Implicit in the trial court's finding that David was responsible for the increase is a finding the capital investment would not have returned its 927 percent increase without his efforts. The increase, therefore, was "due to the personal character, energy, ability and capacity of [David]. [That] share of the earnings [is], of course, community property." (*Pereira* v. *Pereira, supra*, 156 Cal. at p. 7.)

The trial court found GTS had started with nothing. David had the contacts and expertise, and devoted 100 percent of his time, skill and efforts to the success of GTS. David had a capably chosen and capably trained team of employees. The court further determined Barbara was unable to effectively operate GTS, either personally or by her proposals regarding management.

Given the clear mandate of *Beam* v. *Bank of America, supra*, 6 Cal.3d at page 18, to achieve substantial justice between the parties, on the facts of

this case, we conclude the trial court did not abuse its discretion in applying *Pereira*.

The heart of Barbara's argument is that since David was "generously paid for his services during marriage," the trial court's application of *Pereira* gave him a "double dip." On the contrary, were we to heed her urging and reverse the trial court's judgment, Barbara would receive the "double dip." David's "generous salary" was (and is) community property, and Barbara thereby also enjoyed the benefit of David's salary. That salary, however, does not fairly reflect community efforts. David took Barbara's $1,000 and parlayed it into a million-dollar business. The trial court recognized David's contribution and properly applied *Pereira*. That judgment will not be disturbed on this appeal.

## DISPOSITION

The judgment is affirmed.

Benke, Acting P. J., and Huffman, J., concurred.

A petition for a rehearing was denied August 31, 1993, and appellant's petition for review by the Supreme Court was denied December 1, 1993.